WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
Jeffrey G. Smith (133113)
270 Madison Avenue
New York, New York 10016
(212) 545-4600
       - and -
Francis M. Gregorek (144785)
Rachele R. Rickert (190634)
750 B Street, Suite 2770
San Diego, California 92101
(619) 239-4599

HOFFMAN & LAZEAR
H. Tim Hoffman (49141)
180 Grand Avenue
Suite 1550
Oakland, CA 94612
(510) 763-5700

THIERMAN LAW FIRM P.C.
Mark Thierman (72913)
7287 Lakeside Drive, Suite 101
Reno, NV 89511
(775) 284-1500

Attorneys for Plaintiffs

[Additional Counsel Appear On Signature Page]

DARYL S. LANDY
MORGAN LEWIS & BOCKIUS LLP
2 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone:  650/843-7561
Facsimile:   650/843-4001

Attorneys For Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL J. BASILE, ALLAN B. ROSENTHAL, DAVID STABILE, PHILIP J. RICHMAN, JAMES D. NELSON, MARK STEEN, and TERRY TOBIN, on behalf of themselves and all others similarly situated,<br><br>                   Plaintiffs,<br><br>           vs.<br><br>A.G. EDWARDS & SONS, INC.,<br><br>                   Defendant. | CASE NO.  08 CV 0338 JAH (NLS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>DATE:      May 12, 2008<br>TIME:      2:30 p.m.<br>CRTRM:   11<br>JUDGE:    Hon. John A. Houston |

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ........................................................................................1

II.   PROCEDURAL BACKGROUND ..............................................................5

    A.    The Claims in the Litigations and the Consolidated Action .....................7

    B.    Plaintiffs' Position ......................................................................7

        1.    Plaintiffs' FLSA Overtime Claims .................................7

        2.    Plaintiffs' State Law Overtime Claims .........................10

        3.    Plaintiffs' Wage Deduction and Reimbursement Claims ...........10

    C.    AGE's Position .........................................................................13

        1.    Plaintiffs' Overtime Claims .........................................13

        2.    Plaintiffs' Deduction Claims .......................................14

III.  THE PROPOSED SETTLEMENT AND ITS TERMS............................15

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ...............21

V.    CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

## CASES

Page

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................. 24

*Arnold v. Ben Kanowsky, Inc.,*
    361 U.S. 388 (1960)................................................................. 7

*Auer v. Robbins,*
    519 U.S. 452 (1997)................................................................. 8, 14

*Bachrach v. Chase Investment Services Corp.,*
    Slip. Op., Case No. 2:06-cv-02785-WJM-MF
    (D.N.J. November 1, 2007).................................................. 3, 15

*Bahramipour v. CitiGroup Global Markets, Inc.,*
    Case Nos. 04-04440 (CW) AND 07-801 (cw)................... 5

*Churchill Village, L.L.C. v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ............................................... 24

*Dean Witter Reynolds, Inc. v. Ross,*
    75 A.D.2d 373 (1980) .......................................................... 13, 14

*Eule v. Eule Motor Sales,*
    34 N.J. 537 (1961) ............................................................... 11

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989) ............................................ 21

*Gautreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982) .............................................. 2, 22

*Glass v. UBS Financial Services, Inc.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007)...................... 5, 23

*Gottlieb v. Kenneth D. Laub & Co.,*
    82 N.Y.2d 457 (1993) .......................................................... 13

*Handler v. Oppenheimer & Co.,*
    Slip. Op., Case No. BC343542 (Los Angeles Sup. Ct. Oct. 9, 2007)................... 3, 15

*Hein v. PNC Fin. Servs. Group, Inc.,*
    2007 U.S. Dist. LEXIS 44569 (E.D. Pa. June 20, 2007) ............. 2, 3, 9, 14

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    855 F. Supp. 825 (E.D.N.C. 1994)...................................... 22

*Hudgins v. Frito-Lay, Inc.,*
    90 N.Y.2d 342 (1997) .......................................................... 12

08 CV 0338 JAH (NLS)

*In re Exxon Valdez,*
  229 F.3d 790 (9th Cir. 2000) ............................................................ 21

*In re Traffic Executive Association-Eastern Railroads,*
  627 F.2d 631 (2d Cir. 1980)............................................................. 22

*Koehl v. Verio,*
  142 Cal. App. 4th 1313 (2006) ....................................................... 15

*Levy v. Verizon Information Services, Inc.,*
  498 F. Supp. 2d 586 (E.D.N.Y. 2007) ........................................... 15

*Male v. Acme Markets, Inc.,*
  110 N.J. Super. 9 (1970) ................................................................. 11

*Martin v. Refrigeration School, Inc.,*
  968 F.2d 3 (9th Cir. 1992) ................................................................. 9

*Mendoza v. Tucson Sch. District Number 1,*
  623 F.2d 1338 (9th Cir. 1980) ....................................................... 24

*Miller v. Farmers Insurance Exchange,*
  481 F.3d 1119 (9th Cir. 2007) .................................................... 3, 9

*Mobil Oil Corp. v. Altech Industries, Inc.,*
  117 F.R.D. 650 (C.D. Cal. 1987) ................................................... 23

*Pachter v. Bernard Hodes Group, Inc.,*
  2005 U.S. Dist. LEXIS 18005 (S.D.N.Y. Aug. 25, 2005) ............... 12

*Paul, Johnson, Alston & Hunt v. Graulty,*
  886 F.2d 268 (9th Cir. 1989) ......................................................... 23

*Pontius v. Delta Financial Corp.,*
  2007 U.S. Dist. LEXIS 50980 (W.D. Pa. March 20, 2007)
  adopted at 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007) ........... 8

*Robertson v. Opequon Motors, Inc.,*
  205 W. Va. 560 (1999) ................................................................... 12

*Sands Appliance Services v. Wilson,*
  463 Mich. 231 (2000) ..................................................................... 12

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990) ................................................. 20, 23

*Steinhebel v. Los Angeles Times Communications, LLC,*
  126 Cal. App. 4th 696 (2005) ....................................................... 15

*Takacs v. A.G. Edwards & Sons, Inc.,*
  444 F. Supp. 2d 1100 (S.D. Cal. 2006)............................................. 8

*Torrisi v. Tucson Electric Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) ........................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005)............................................................................. 2

*White v. National Football League,*
   41 F.3d 402 (8th Cir. 1994) ........................................................................ 24

## STATUTES & RULES

8 Alaska Admin Code
   §15.160(a) .................................................................................................. 11

28 U.S.C.
   §§ 1331-32 .................................................................................................... 7
   § 1367........................................................................................................... 7
   § 1715...................................................................................................... 21, 25

29 U.S.C.
   § 201 *et seq* ............................................................................................... 1, 7
   § 207(a)(1) .................................................................................................... 7
   § 207(i) ......................................................................................................... 9

29 C.F.R.
   § 541.200(a)(1) ............................................................................................. 8
   § 541.200(a)(2) ............................................................................................. 8
   § 541.203(b) ........................................................................................ 8, 9, 14
   § 541.207(d)(2) ........................................................................................... 13
   § 779.317 ...................................................................................................... 9
   § 779.318 ................................................................................................. 9, 10

Fed. R. Civ. P.
   23(b)(3) ......................................................................................................... 3
   23(e) ........................................................................................................... 21
   23(c)(2)(B) .................................................................................................. 24
   53(a)(1)(A) ........................................................................................ 5, 23, 25

Haw. Rev. Stat.
   § 388-6 ........................................................................................................ 11

Ky. Rev. Stat.
   § 337.060 ..................................................................................................... 11

Me. Rev. Stat.
   § 629 ........................................................................................................... 11

Mich. Comp. Laws
   § 408.477(1) ................................................................................................ 12
   § 408.478 .................................................................................................... 12

N. H. Rev. Stat
   § 275:48 ...................................................................................................... 11

N.Y. Lab. Law
    § 193.................................................................................................. 12, 13
    Article 6 ................................................................................................. 13

Or. Rev. Stat.
    § 652.610(3) ............................................................................................ 11

Rev. Code Wash
    § 49.52.060 .............................................................................................. 11

R.I. Gen. Laws
    § 28-14-24(a)(1) ....................................................................................... 11

W. Va. Code
    § 21-5-3 .................................................................................................. 12

Weil's Code Wy. Rules, 025-0140-001,
    § 6(b)(vi) ................................................................................................. 11

# OTHER

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside
    Sales, and Computer Employees, 69 Fed. Reg. 22122, 22146 (April 23, 2004) ...................... 13

Department of Labor Opinion Letter, FLSA 2006-43 (Nov. 27, 2006)...................... 2, 8, 9, 14, 15

MANUAL FOR COMPLEX LITIGATION, THIRD (1997) ................................................ 2, 22

NEWBERG ON CLASS ACTIONS, FOURTH (2002)
    § 11.25 .................................................................................................... 22

# I.    INTRODUCTION

In this joint motion, Plaintiffs Carl J. Basile, Allan B. Rosenthal, David Stabile, Philip J. Richman, James D. Nelson, Mark Steen and Terry Tobin (collectively, "Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated, on the one hand, and A.G. Edwards & Sons, Inc. ("AGE") (together, the "Parties") seek preliminary approval of a $12,000,000 class and collective action settlement (the "Settlement") reached on behalf of the following in a collective action ("Collective Action"): All individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all or part of the period from July 6, 2003 through the date this Court enters an order preliminarily approving the allocation and approving the form of notice to the Class ("Notice Approval Date" or "Notice and Allocation Approval Date"), and on behalf of the following class ("Class"):    All individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all or part of the maximum applicable statute of limitations period for the state in which the individual was employed by AGE (as set forth in Schedule 1 to the Parties' Joint Stipulation and Settlement Agreement ("Stipulation")) through the Notice Approval Date (collectively referred to herein as "Class Members").    A copy of the Parties' Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement is attached to the Stipulation as Exhibit ("Exh.") 2.

The Plaintiffs and the Class Members are Financial Consultants (also known as stockbrokers) who are current or former AGE employees.    They allege entitlement under federal and state wage and hour laws for overtime payments for hours they worked in excess of 40 hours a week, which they were denied because AGE allegedly misclassified them as "exempt" employees under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), as well as applicable state law.    They also allege that AGE made deductions from commissions or salary paid to them for certain business-related and other expenses, such as administrative expenses and losses due to trading errors, which Plaintiffs claim are impermissible under state wage and hour laws.    AGE denies the Plaintiffs' allegations and maintains that at all times it paid its Financial Consultants in accordance with applicable law.

Through the instant motion, the Parties seek preliminary approval of the Settlement.

08 CV 0338 JAH (NLS)

Because the eventual fairness hearing will provide the Court another opportunity to review the Settlement with the benefit of both Class Member input and a determination by a court-appointed Special Master (provided for under the terms of the Settlement Agreement) as to the fairness of the allocation of settlement funds, settled law and practice under Rule 23 provides that if the proposed Settlement is "within the range of possible approval," the Court should grant preliminary approval and authorize the Parties to give notice of the proposed Settlement to Class Members. *Gautreaux v. Pierce,* 690 F.2d 616, 621 n. 3 (7th Cir. 1982). *See also* MANUAL FOR COMPLEX LITIGATION, THIRD § 30.41 (1997). Further, settlements that are reached as a result of arms-length bargaining between experienced and well-informed counsel are entitled to a presumption of fairness. MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42, p. 240; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Those criteria are clearly met as the Parties show in more detail below. That Plaintiffs would win, let alone win more than the $12 million Settlement amount, were they to go to trial, is far from certain. The application of the FLSA and state wage and hour laws to securities brokers, according to Plaintiffs, present novel questions in a new and evolving area of the law. The claims alleged in the Litigations (as defined below) are novel and highly technical. For instance, there is no reported court decision that holds that stockbrokers or financial consultants are entitled to overtime pay or reimbursement of the costs associated with trading errors or business-related expenses at issue in the Parties' litigations. To the contrary, on November 27, 2006, the United States Department of Labor issued an opinion letter stating that, in many cases, stockbrokers and financial consultants are *not* entitled to overtime pay under federal law. In addition, on June 20, 2007, a federal district court issued an order dismissing the overtime claims of a stockbroker, finding that the stockbroker was exempt from the overtime requirements of federal law and therefore not entitled to overtime pay under federal law. *Hein v. PNC Fin. Servs. Group, Inc.,* 2007 U.S. Dist. LEXIS 44569 (E.D. Pa. June 20, 2007) (dismissing an overtime claim asserted by a securities broker, concluding that he was "plain[ly] and unmistakabl[y]" exempt from the overtime pay requirements of the FLSA). Similarly, some recent court decisions suggest that employees may be held liable for certain types of errors and business-related expenses and that there is a distinction between wage deductions and commission calculations. In other words, Plaintiffs' ability to prevail

on the claims alleged in the Litigations is highly uncertain.

In addition, the decision in *Hein* that the securities broker in that case was "plainly and unmistakably" exempt supports AGE's position that class certification would not be appropriate in the Litigations that are the subject of the Parties' Settlement because the determination of whether AGE's Financial Consultants are exempt requires fact intensive individualized inquiries and analyses of the specific duties and work performed by each individual Class that must be made on a person-by-person basis.  Indeed, in two recent decisions, courts have denied class certification in wage and hour actions brought by stockbrokers with claims virtually identical to the claims presented by Plaintiffs in this action.  In *Bachrach v. Chase Investment Services Corp.*, Slip. Op., Case No. 2:06-cv-02785-WJM-MF (D.N.J. November 1, 2007), the court found both that the proposed class was over inclusive because the putative class members "likely" are administratively exempt and do not have claims for overtime, and that the requirements of Rule 23(b)(3) were not met:

> Rule 23(b)(3) permits a class action only if common questions predominate.  Here, individual questions would predominate.  With respect to the deductions claims, the law clearly bars such deductions.  The only issues are whether each member was actually a victim of deductions.  With respect to the overtime claims, the law strongly suggests that members were not entitled to overtime.  Proving otherwise would require individual exploration of each member's specific work habits. Accordingly, individual questions would predominate this litigation, so the class is not maintainable under Rule 23(b)(3).

Similarly, in *Handler v. Oppenheimer & Co.*, Slip. Op., Case No. BC343542 (Los Angeles Sup. Ct. Oct. 9, 2007), the court held that certification of a class of stockbrokers was not appropriate in that case, *inter alia*, because the determination of whether stockbrokers are exempt requires fact intensive individualized inquiries and analyses that must be made on a person-by-person basis.  *Id.* at 10-21.  In other words, the ability of the Class Representatives to proceed with their claims as a class or collective action is highly uncertain.

Furthermore, even if the Class obtained a favorable judgment in the District Court, that judgment would likely be tied up for several years on appeal.  Recently, the Ninth Circuit Court of Appeals reversed a $52.5 million judgment for plaintiffs in an overtime class action involving insurance claims adjusters.  *Miller v. Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007).  In light of the substantial risk that the Class might not receive anything at all if the Litigations

proceeded to trial, Class Counsel strongly believe that the Settlement is in the best interests of the Class.

This Settlement is the result of good-faith, arms-length negotiations between the Plaintiffs and AGE through their respective attorneys. Various counsel for Plaintiffs in this action have represented plaintiffs in class and collective actions against other securities firms asserting similar claims to those in this case. Likewise, counsel for Plaintiffs have been counsel for the plaintiffs in a number of similar cases in which courts have approved class and collective action settlements. Among those cases was *Takacs v. A.G. Edwards & Sons, Inc.*, Case No. 04-CV-1852 JAH (NLS) ("*Takacs*"), in which the plaintiffs alleged that AGE violated the FLSA and California law by failing to pay California-based Financial Consultants overtime, and violated California law by failing to provide meal, break, and/or rest periods, making unlawful deductions from wages, and failing to reimburse business expenses. The *Takacs* action was settled in February 2007 for $20 million, and the settlement received this Court's preliminary approval on June 21, 2007, and final approval on November 5, 2007. Thus, the Parties and their counsel were fully aware of the relative strengths and potential weaknesses which led to the Court-approved settlement in *Takacs*, and weighed those strengths and weaknesses with due regard to (1) the significant differences between California law and laws of other states relating to the overtime, deduction and other claims covered by the Settlement, (2) the different periods of time covered by the *Takacs* settlement and the Settlement in this case, and (3) developments in relevant case law since the settlement in *Takacs* in February 2007. Counsel for Plaintiffs believe that this was the best settlement available to Plaintiffs at this time, and the best likely to be available in the future. In light of the risks associated with continued litigation, this Settlement is fair and more than reasonable, and will result in significant financial benefit to the Class.

Because the Settlement involves the laws of 49 states and the District of Columbia – some of which are arguably more favorable to employees than others – one important question is how to allocate the proceeds among the various jurisdictions covered by the Settlement. To assist the Parties and the Court with this allocation, the Parties respectfully request that the Court appoint the Honorable Charles A. Legge, United States District Judge for the Northern District of California (Ret.), as Special Master to review the Parties' proposed allocation of Settlement proceeds, and

ultimately to make an independent written recommendation to the Court as to a settlement allocation that is fair and reasonable. Recently, Judge Legge served in a similar capacity in connection with a nationwide settlement of wage and hour claims brought on behalf of Financial Consultants of UBS Financial Services, Inc. *See* "Order Appointing the Honorable Charles Legge as Master Pursuant to the Stipulation of Parties," Docket No. 116 in *Glass v. UBS Financial Services, Inc.*, N.D. Cal. Case No. 06-4068 MMC (Dec. 7, 2006). On January 26, 2007, the Honorable Maxine M. Chesney granted final approval of that settlement, relying in part on Judge Legge's findings regarding the allocation of settlement proceeds. *See Glass v. UBS Financial Services, Inc.,* 2007 WL 221862 (N.D. Cal. Jan. 26, 2007). Judge Legge has also served in a similar capacity in *Bahramipour v. CitiGroup Global Markets, Inc.*, Case Nos. 04-04440 (CW) and 07-801(CW) (N.D. Cal.), presently pending before the Honorable Claudia Wilken. Given Judge Legge's familiarity with the laws of the states and territories covered by the Settlement, allowing Judge Legge to make a recommendation regarding the settlement allocation before the class notice is mailed would ease the burden on the Court and may satisfy potential objectors that the allocation is appropriate.

Accordingly, the Parties respectfully request that the Court: (1) preliminarily approve the proposed $12 million Settlement; (2) conditionally certify, for settlement purposes only, the Class and the Collective Action described herein; (3) appoint Judge Legge as Special Master pursuant to Fed. R. Civ. P. 53(a)(1)(A) to review and make a recommendation regarding the allocation of the Settlement proceeds among participating claimants; and (4) schedule a notice and allocation approval hearing approximately three weeks after the receipt of Judge Legge's recommendation to this Court following preliminary approval. Upon receipt of Judge Legge's written recommendation, the Parties will return to this Court and ask the Court to: (1) incorporate the proposed allocation into the class notice; (2) authorize the mailing of the notice; and (3) set a final approval hearing date.

## II.    PROCEDURAL BACKGROUND

On July 6, 2006, Class Representative Carl Basile commenced a proposed class action against AGE in the United States District Court for the Northern District of New York ("Basile action"). *Basile v. A.G. Edwards & Sons, Inc.*, S.D.N.Y. Case No. 1:06-CV-00833. On August 23,

08 CV 0338 JAH (NLS)

2006, Class Representative Allan Rosenthal commenced a proposed class and collective action against AGE in the United States District Court for the District of New Jersey ("Rosenthal action"). *Rosenthal v. A.G. Edwards & Sons, Inc.*, D. NJ, Case No. 3:06-CV-03995. On September 7, 2006, Class Representative David Stabile commenced a proposed class action against AGE in the Court of Common Pleas of Allegheny County Pennsylvania, bearing G.D. No. 06-020998. On October 11, 2006 AGE removed the case to the United State District Court for the Western District of Pennsylvania ("Stabile action"). *Stabile v. A.G. Edwards & Sons, Inc.*, W.D. Pa., Case No. 06-CV-1360. On October 13, 2006, Class Representatives Philip Richman and James D. Nelson commenced a proposed class and collective action against AGE in the United States District Court for the District of Oregon ("Richman action"). *Richman v. A.G. Edwards & Sons, Inc.*, D. Or., Case No. 3:06-CV-1453. On February 6, 2007, Class Representative Mark Steen commenced a proposed class and collective action against AGE in the United State District Court for the Western District of Pennsylvania ("Steen action"). *Steen v. A.G. Edwards & Sons, Inc.*, W.D. Pa., Case No. 2:07-CV-0147. On May 29, 2007, Class Representative Terry Tobin commenced a proposed class and collective action against AGE in the United States District Court for the Southern District of Ohio ("Tobin action"). *Tobin v. A.G. Edwards & Sons, Inc.*, S.D. Oh., Case No. 2:07-CV-0489. (The aforementioned actions shall be collectively referred to as the "Litigations".)

On June 13, 2007, after months of discussions and negotiations through counsel experienced in these types of cases, the Parties participated in a mediation before Mark Buckstein, a well-respected mediator. During that mediation the Parties reached a proposed conditional settlement of the Litigations. To effectuate the Settlement of the foregoing lawsuits, and pursuant to the Parties' Settlement and the Stipulation, the Plaintiffs in each of the aforementioned actions filed the consolidated complaint in this action in the United States District Court for the Southern District of California (the "Consolidated Action") that they designated as related to the *Takacs* Action. A copy of the consolidated complaint is attached to the Stipulation as Exh. 1.

SUMMARY OF THE CLAIMS AT ISSUE

Plaintiffs and AGE have widely divergent views regarding the merits of Plaintiffs' claims. The Plaintiffs' claims in the Litigations and the Consolidated Action and the Parties' positions with respect to those claims are summarized below.

08 CV 0338 JAH (NLS)

### A.    The Claims in the Litigations and the Consolidated Action

In the Litigations and the Consolidated Action, the Class Representatives allege on behalf of AGE Financial Consultants nationwide (excluding California), among other things, that:  (a) Class Members were misclassified as exempt from federal and applicable state wage and hour laws and not paid the required compensation for overtime hours they worked; (b) Class Members incurred business related expenses that AGE did not reimburse them for as required by law; and (c) AGE unlawfully made deductions from Class Members' compensation, *inter alia*, for errors, support staff compensation and business expenses.  Plaintiffs assert, *inter alia*, claims for alleged unpaid overtime compensation, liquidated damages, attorneys' fees and litigation costs under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; and for alleged unpaid overtime compensation, for alleged failure to reimburse, indemnify, cover or pay for business costs, for alleged unlawful imposition, deduction or chargeback of business costs, and for premium pay, interest, liquidated damages, punitive damages, penalties, restitution, attorneys fees and litigation costs under applicable state wage and hour laws.  Plaintiffs allege original federal court jurisdiction on the basis of federal question jurisdiction with respect to their Fair Labor Standards Act claims and Class Action Fairness Act ("CAFA") diversity jurisdiction and supplemental jurisdiction with respect to their state law claims.  *See* 28 U.S.C. §§ 1331-32, 1367.

AGE denies Plaintiffs' allegations in their entirety and maintains that it complied with all applicable state and federal laws with respect to the payment of Class Members.  Specifically, it is AGE's position that its Financial Consultants were properly classified as "exempt" employees, and that no unlawful deductions were made from their earned wages.

### B.    Plaintiffs' Position[1]

#### 1.    Plaintiffs' FLSA Overtime Claims

Under the FLSA, all employees, regardless of their title, must be paid overtime for any hours they work in excess of 40 per week, unless the employee is "exempt." 29 U.S.C. § 207(a)(1). The employer bears the burden of proving that the employee is exempt from overtime.  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).  Plaintiffs contend that Financial Consultants do not meet the test for exempt status under the FLSA.

---

[1]    This section summarizes Plaintiffs' position only and is not endorsed by AGE.

08 CV 0338 JAH (NLS)

In order to qualify for the administrative exemption, the employee must be paid on a salary or fee basis, commonly referred to as the "salary basis test." *See*, 29 C.F.R. § 541.200(a)(1). One of the key disputes in this case is whether the guaranteed monthly payment that AGE makes to its Financial Consultants qualifies as a "salary" for the purpose of the salary basis test. In litigating this issue, Plaintiffs would rely upon the August 2, 2006 opinion of this Court in *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100 (S.D. Cal. 2006), in which this Court "construe[d] the 'draw' deduction as an impermissible offset that is taken from Plaintiffs' guaranteed salary." *Id.* at 1110. Plaintiffs anticipate that AGE would rely on the November 27, 2006 opinion letter from the United States Department of Labor (the "DOL Opinion Letter"), which holds that a guaranteed payment meets the salary basis test provided that the amount of the payment does not fall below the FLSA's minimum salary threshold (currently $455 per week, or $1,971.67 per month). *See* DOL Opinion Letter, FLSA 2006-43 (Nov. 27, 2006), pp. 7-8, attached as Exhibit A to the Compendium of Authorities filed herewith. The DOL Opinion Letter is significant because the salary basis test "is a creature of the Secretary [of Labor]'s own regulations," and the DOL's interpretation is controlling "unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). At least one district court has relied on the November 27, 2006 DOL letter to hold that a draw-versus-commission plan does, in fact meet the FLSA's salary basis test. *See Pontius v. Delta Financial Corp.*, 2007 U.S. Dist. LEXIS 50980, *20-22 (W.D. Pa. March 20, 2007) adopted at 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007). In this case, AGE has consistently taken the position that it provides its Financial Consultants with a guaranteed monthly payment that satisfies the FLSA's minimum salary requirement. In light of the DOL Opinion Letter, Plaintiffs face a substantial risk that a court might rule that AGE meets the salary basis test.

Another element of the administrative exemption is commonly referred to as the "primary duties test." 29 C.F.R. § 541.200(a)(2). Plaintiffs claim that Financial Consultants are not administratively exempt because their primary duty is selling financial products, *citing* 29 C.F.R. § 541.203(b).[2] Conversely, AGE argues that a Financial Consultant's primary duty is to analyze

---

[2] 29 C.F.R. § 541.203(b) provides:

(b) Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and

the customer's financial information and advise the customer about which financial products may meets the customer's needs, which is exempt work. *See, id.* In its November 27, 2006 Opinion Letter, the DOL held that stockbrokers meet the duties test of the administrative exemption even though they spend some of their time selling financial products. *See* DOL Opinion Letter, pp. 5-6. The federal court in *Hein* similarly ruled that the financial advisor in that case met the primary duties test for the FLSA's administrative exemption. *Hein,* 2007 U.S. Dist. LEXIS 44569. Significantly, the Ninth Circuit has recently signaled an inclination to defer to the DOL when interpreting the FLSA. In *Miller,* 481 F.3d 1119, the Ninth Circuit reversed an award of $52.5 million in overtime pay to a class of Farmers claims adjusters, relying in part on a DOL opinion letter holding that claims adjusters are administratively exempt under the FLSA. Both the DOL Opinion Letter and the *Hein* decision increase the likelihood that a court might rule against Plaintiffs on the duties test.

As a separate defense to Plaintiffs' FLSA claims, AGE also asserts that its Financial Consultants fall within the FLSA's commissioned sales exemption. An employee is exempt under the commissioned sales exemption if he or she:  (1) earns at least 1.5 times the federal minimum wage; (2) more than half of the employee's compensation represents commissions; and (3) he or she is employed by a "retail or service establishment." 29 U.S.C. § 207(i).  Financial Consultants meet the first two criteria, but there would be a dispute as to whether AGE qualifies as a retail or service establishment.  Plaintiffs argue that, under the Department of Labor's regulations, "stock or commodity brokers" do not qualify as retail or service establishments.  29 C.F.R. § 779.317.  On the other hand, AGE argues that it meets the definition of a retail or service establishment and that Section 779.317 has been criticized by the Ninth Circuit as arbitrary and "not … flow[ing] from any cohesive criteria."  *Martin v. Refrigeration School, Inc.*, 968 F.2d 3, 7 n.2  (9th Cir. 1992); 29

---

analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.  However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

29 C.F.R. § 541.203(b).

08 CV 0338 JAH (NLS)

C.F.R. § 779.318.

Thus, with regard to the FLSA overtime claims, AGE potentially has at least two complete defenses to liability.

### 2.    Plaintiffs' State Law Overtime Claims

The Settlement, if approved, would also resolve any overtime claims that might exist under state law. Sixteen states do not have overtime requirements that are independent of the FLSA. Of the remaining states, all but seven have adopted exemptions that are identical to the FLSA's. All of these states require the payment of overtime for any hours worked over 40 per week, and some require the payment of overtime for any hours worked over 8 per day. In particular, these states define the administrative exemption in a manner that is virtually identical to the FLSA (except that in New York, New Jersey, Wisconsin, Maine, Connecticut, and Rhode Island, the salary requirements have at times been higher). Because these states' laws are modeled after the FLSA, the potential defenses AGE has to the FLSA claims apply equally to the claims under these state laws. Thus, with the exception of seven states (one of which is California) the analysis of the strengths and weaknesses of the state law overtime claims is identical to the analysis under the FLSA. The six states that require additional discussion are New York, New Jersey, Wisconsin, Maine, Connecticut, and Rhode Island.

### 3.    Plaintiffs' Wage Deduction and Reimbursement Claims

Plaintiffs also seek recovery of certain expenses that, in their view, were improperly deducted from the wages of Financial Consultants, including payments to support staff, losses due to trading errors, marketing expenses, registration fees, and similar charges. Plaintiffs anticipate that AGE will maintain that the challenged practices are either part of a lawful commission calculation, or were deductions made with the written consent of the Financial Consultants. Because the FLSA does not prohibit wage deductions so long as the employee earns at least the federal minimum wage (currently $5.15 per hour), Plaintiffs bring these claims solely under state law.

In the majority of states and territories, these types of adjustments are legal even if characterized as a deduction from wages – either there is no law on the subject, or state law expressly permits the deductions so long as they are authorized by the employee in writing.

08 CV 0338 JAH (NLS)

However, Plaintiffs' counsels' analysis indicates that 19 states have laws that arguably restrict an employer's right to deduct business-related expenses from an employee's wages. These states are: Alaska, California, Hawaii, Iowa, Indiana, Kentucky, Maine, Michigan, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, South Dakota, Vermont, Washington, West Virginia, and Wyoming. Of these states, California's laws are most favorable to employees.

For example, Plaintiffs contend that Alaska, Hawaii, Kentucky, Maine, Rhode Island, and Wyoming have statutes that prevent an employer from deducting losses due to employee negligence. *See* 8 Alaska Admin. Code § 15.160(a) (employer cannot deduct for "damage or breakage costs" unless due to willful misconduct); Haw. Rev. Stat. § 388-6 (no deductions for "defective or faulty workmanship" unless employee's misconduct was willful); Ky. Rev. Stat. § 337.060 (same as Hawaii); 26 Me. Rev. Stat. § 629 (employer cannot require employee to bear losses as condition of employment); R.I. Gen. Laws § 28-14-24(a)(1) (employer cannot set-off losses against employee's wages); Weil's Code Wy. Rules, 025-0140-001, § 6(b)(vi) (employer cannot deduct losses unless employee's negligence has been determined in a judicial proceeding). At least one New Jersey court has read a similar limitation into New Jersey law. *Eule v. Eule Motor Sales*, 34 N.J. 537, 540-41 (1961); but *see Male v. Acme Markets, Inc.*, 110 N.J. Super. 9, 13 (1970) (suggesting that wage deduction is permitted if employee admits fault).

Plaintiffs contend that these statutes and judicial decisions prevent AGE from deducting losses due to trading errors from a Financial Consultant's commissions. Plaintiffs anticipate that AGE's response would be twofold:  first, that the adjustments at issue are part of a lawful commission calculation that do not qualify as a deduction from wages in the first instance; and second, that even if the adjustments were deemed deductions from wages, the relevant statutes permit AGE to deduct losses resulting from willful or grossly negligent conduct on the part of the Financial Consultants, and determining whether a Financial Consultant's conduct was sufficiently culpable to warrant a deduction must be done on a case-by-case (as opposed to a class) basis.

Plaintiffs further contend that New Hampshire, Oregon, and Washington have statutes that appear to prohibit any type of wage deduction unless the deduction benefits the employee. *See* N.H. Rev. Stat. § 275:48; Or. Rev. Stat. § 652.610(3); Rev. Code Wash. § 49.52.060 (deduction must be authorized in writing by employee and accrue to employee's benefit). However, Plaintiffs

- 11 -

expect AGE to respond that allowing Financial Consultants to divert part of their commissions on a pre-tax basis to pay their business expenses actually benefits the Financial Consultants, since these expenses are not fully deductible on an individual tax return (*i.e.*, they are subject to the 2% limitation for "Miscellaneous" deductions).

Michigan has a statute that prevents employers from requiring employees to pay any form of remuneration or consideration as a condition of employment. Mich. Comp. Laws § 408.478. The Michigan Supreme Court has interpreted Section 408.478 to prohibit an employer from forcing an employee to sign an agreement to repay training expenses. *Sands Appliance Services v. Wilson*, 463 Mich. 231 (2000). On the other hand, Michigan law appears to permit wage deductions so long as the employer obtains "the full, free, and written consent of the employee." Mich. Comp. Laws § 408.477(1). Plaintiffs believe AGE would take the position that the authorities cited by Plaintiffs are not applicable to commission calculations, and that even if they are, the deductions are authorized in writing by the Financial Consultants and are completely voluntary.

In West Virginia, a decision from the state Supreme Court entitled *Robertson v. Opequon Motors, Inc.*, 205 W.Va. 560, 567 (1999), holds that an employer cannot deduct certain business expenses, such as credit card charges and repair costs, from an employee's commissions without first obtaining a notarized wage assignment from the employee. *Id.* (citing W. Va. Code § 21-5-3). However, in that case, the court emphasized that the deductions were arbitrary and not fully disclosed to the employees. *Id.* at 565-66. Here, Plaintiffs expect AGE to argue that the Financial Consultants are aware of the deductions from their commissions before they are taken, and, in most if not all cases, specifically request the adjustments.

Finally, New York has a statute that prohibits any type of deduction from wages unless the deduction is authorized in writing and benefits the employee. N.Y. Lab. Law § 193. New York's highest court, the Court of Appeals, has stated that Section 193 "was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." *Hudgins v. Frito-Lay, Inc.*, 90 N.Y. 2d 342, 349 (1997). Relying on *Hudgins*, a Federal District Court in New York recently held that an employer violated Section 193 when it deducted certain business expenses from an employee's commissions. *Pachter v. Bernard Hodes Group, Inc.*, 2005 U.S. Dist. LEXIS 18005 (S.D.N.Y. Aug. 25, 2005). *Pachter* is currently pending on appeal. Other

- 12 -

08 CV 0338 JAH (NLS)

courts have held that Article 6 of the New York Labor Law (which includes Section 193) does not apply to exempt employees. *See Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 461 (1993) (suggesting that Article 6 does not protect employees serving in an executive, managerial, or administrative capacity). Furthermore, even if Section 193 does protect Financial Consultants, a New York appellate court has held that a securities firm like AGE may deduct business expenses in the computation of a stockbroker's incentive pay in the form of commissions. *Dean Witter Reynolds, Inc. v. Ross*, 75 A.D.2d 373, 381 (1980).

In summary, although Plaintiffs believe their wage deduction and reimbursement claims have merit, AGE has both procedural and substantive defenses to those claims.

C.     **AGE's Position**

1.     **Plaintiffs' Overtime Claims**

AGE's position is that highly compensated Financial Consultants, many of whom earn hundreds of thousands of dollars in compensation per year, are not eligible for overtime compensation under the FLSA or under any state law. These individuals are exempt from overtime compensation under a variety of exemptions under state and federal laws, including but not limited to executive, administrative, professional, and commissioned sales exemptions. For example, for decades, interpretative regulations from the DOL provided that an employee working as a "customer's man in a brokerage house" (also known as a stockbroker) was exempt from overtime. 29 C.F.R. §541.207(d)(2) (2003). In 2004, the DOL issued new regulations reconfirming the exempt status of stockbrokers with the preface that "our approach is consistent with existing section 541.207(d)(2) which provides that a 'customer's man in a brokerage house' exercises discretion and independent judgment 'in deciding what recommendations to make to customers for the purchase of securities. ...'" Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, 69 Fed. Reg. 22122, 22146 (April 23, 2004). The 2004 regulation, designed to confirm stockbrokers' exempt status, provides:

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose

08 CV 0338 JAH (NLS)

primary duty is selling financial products does not qualify for the administrative exemption.

29 U.S.C. § 541.203(b). The DOL again confirmed its position that financial consultants, like Plaintiffs, are exempt from overtime in its November 27, 2006 Opinion Letter. *See* DOL Opinion Letter, FLSA 2006-43 (Nov. 27, 2006). The DOL's interpretation of its own regulations is controlling "unless plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (1997). Most recently, a federal court dismissed the claim of a stockbroker who was suing his employer for overtime pay, ruling that the stockbroker was "plain[ly] and unmistakabl[y]" an exempt administrative employee who was not entitled to overtime pay under the FLSA. *Hein*, 2007 U.S. Dist. LEXIS 44569.

### 2.    Plaintiffs' Deduction Claims

As with Plaintiffs' overtime claims, AGE believes that Plaintiffs' state law wage deduction claims are without merit. Plaintiffs' claims are premised on the requirement under certain states' laws that employers not make deductions from employees' wages once such wages have been earned. None of those states' laws, however, dictate how an employee's incentive compensation or other earned wages must be calculated. Here, AGE has a detailed formula that sets forth how and when a Financial Consultant's incentive compensation is calculated, earned and awarded. The formula may take into account not only the fees paid by AGE's clients for the services AGE performs, but also adjustments for cancelled trades, trade errors, and expenses, which affect the calculation of incentive compensation. Incentive compensation is not earned or awarded until after all of the elements of this compensation formula have been applied. Thus, the adjustments made by AGE in calculating each Financial Consultant's commissions are just that – adjustments made in the calculation process, and not deductions from earned wages.

Courts have repeatedly rejected attacks on such compensation plans as unlawful deductions from earned wages. For example, a New York appellate court held that a brokerage firm could offset trade errors and certain other business expenses as part of the calculation of incentive pay in the form of commissions for stockbrokers at the end of a production period without violating the New York Labor Law. *Dean Witter Reynolds*, 75 A.D.2d at 381. The court concluded that the incentive pay did not become "earned" until the end of the production period, so that plaintiff had no "vested" interest in the payment "until all appropriate adjustments were made in conformity with

08 CV 0338 JAH (NLS)

the incentive production plan." *Id.; see also Levy v. Verizon Information Servs., Inc.*, 498 F. Supp. 2d 586 (E.D.N.Y. 2007) (holding under New York and Pennsylvania law that where an incentive compensation formula includes adjustments at the end of a production period, compensation does not qualify as earned "wages" until after such adjustments are made); *Koehl v. Verio*, 142 Cal. App. 4th 1313 (2006) (commission plans allowing employer to charge back previously advanced sales commissions when sales credited failed to generate revenue did not violate California law); *Steinhebel v. Los Angeles Times Communications, LLC*, 126 Cal. App. 4th 696, 703-04 (2005) (same); November 27, 2006 DOL Opinion Letter (concluding that paying securities brokers commissions based on a formula that adjusts for cancelled trades, trade errors, expenses, and other trading-related losses does not constitute making deductions from salary so as to violate the FLSA's salary basis test).

Furthermore, it is AGE's position that even if any amounts at issue in Plaintiffs' claims constituted deductions from earned wages, which they do not, most states that have laws concerning deductions from wages permit employers to make such deductions if they are authorized by the employee. Here, Financial Consultants were made aware of how their incentive compensation was to be calculated and authorized it to be calculated in that manner.

Finally, it is AGE's position that certification of a class of Financial Consultants in this case is not appropriate because the determination of whether Financial Consultants are exempt requires fact intensive individualized inquiries and analyses that must be made on a person-by-person basis. *See, e.g., Bachrach v. Chase Investment Services Corp.*, Slip. Op., Case No. 2:06-cv-02785-WJM-MF (D.N.J. November 1, 2007); *Handler v. Oppenheimer & Co.*, Slip. Op., Case No. BC343542, at 10-21 (Los Angeles Sup. Ct. Oct. 9, 2007).

## III.    THE PROPOSED SETTLEMENT AND ITS TERMS

As noted, Plaintiffs and AGE engaged in good-faith, arms-length negotiations through their respective attorneys. Plaintiffs and the absent Class Members were represented by law firms with significant experience handling wage and hour class and collective actions. The result of those negotiations was an agreement to settle Plaintiffs' claims on the terms set forth in the Stipulation filed herewith and for which Plaintiffs and AGE now seek preliminary approval.

The proposed Settlement calls for the conditional certification, for settlement purposes only

08 CV 0338 JAH (NLS)

of a Class of all individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all or part of the maximum applicable limitations period for the state in which the individual was employed by AGE (as set forth in Schedule 1 to the Stipulation) through the Notice Approval Date, and of a Collective Action of all individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all or part of the period from July 6, 2003 through the Notice Approval Date.

Under the terms of the Stipulation, Plaintiffs and AGE request that the Court appoint the Honorable Charles A. Legge, a retired Federal Judge of the Northern District of California, as a Special Master to review and make an independent determination concerning the fairness of the allocation of the Settlement proceeds among participating claimants in light of the applicable wage and hour laws in the jurisdictions covered by the Settlement and any other factors deemed appropriate by the Special Master, and to make a written recommendation to the Court regarding the allocation prior to the mailing of the class notice (provided, however, that the Special Master's recommendation shall in no way vary or contradict the terms of the Stipulation); and after the class notice is mailed, to review and/or hear any objections with respect to the allocation of Settlement proceeds and to make a written recommendation to the Court regarding those objections in advance of the final approval hearing. Stipulation §§ 1.49, 2.3.1 & Exh. 6. After the Special Master has issued his recommendation, the Parties shall move the Court for an order preliminarily approving the allocation of settlement funds and entering the Notice and Allocation Approval Order. Stipulation § 2.5.1.

The Parties also request that the Court appoint The Garden City Group, Inc., a professional claims administration firm, as the Claims Administrator to mail the Class Notice and to perform other required claims administration services. Stipulation §§ 1.5, 2.6. If, by entering the Preliminary Approval Order and the Notice Approval Order, the Court provides authorization to send the Class Notice to Class Members, AGE, through the Claims Administrator, will facilitate the mailing of the Class Notice to all Class Members. Stipulation § 2.6. The Class Notice will explain the purpose of the Class Notice, and describe the Litigations, the terms of the Settlement, and each Class Member's options with regard to participating in the Settlement. Stipulation Exh. 3. The

08 CV 0338 JAH (NLS)

Class Notice will also provide information regarding the consequences of doing nothing in response to the Class Notice, the final approval hearing, and how Class Members can obtain additional information. Stipulation Exh. 3.

Prior to mailing the Class Notices, the Claims Administrator will take measures to verify and confirm accuracy of and, if possible, update a Class Member's mailing address. Stipulation § 2.6.4. In addition, in the event that any Class Notice is returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, the Claims Administrator will perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice within fourteen (14) days of receiving such information. Stipulation § 2.6.8. To the extent a Class Member, whose address has not been deemed unknown by the Claims Administrator, has not submitted to the Claims Administrator some form of written response to the Class Notice by thirty (30) days before the Notice Response Deadline, the Claims Administrator shall send that Class Member a reminder postcard. Stipulation § 2.6.9.

As explained more fully in the Class Notice, Class Members may elect to "opt out" of the Settlement Class and thus exclude themselves from the Litigations, the Settlement and the Settlement Class by completing and submitting the form entitled "Election to Opt Out of Settlement and Class Action" attached to the Class Notice as Form B by the Notice Response Deadline (sixty (60) days after the Class Notice is mailed to the Class Members by the Claims Administrator). Stipulation §§ 1.32, 1.33, 2.7.2 & Form B. Class Members who do not timely submit fully completed and properly executed Opt Out forms shall be deemed Members of the Settlement Class. Stipulation § 2.7.2. Class Members who do timely submit fully completed and properly executed Opt Out forms will not receive a settlement payment, but also will not be subject to the release of claims, and will be deemed to have never participated in the Litigations or this Settlement. Stipulation § 2.7.2 & Exh. 3 at 9.

In addition, as explained in more detail in the Class Notice, Class Members who do not opt out will have an opportunity to object to the Settlement. Stipulation § 2.7.3 & Exh. 3 at 9

All Class Members who do not submit timely forms electing to opt out of the Settlement

will become members of the Settlement Class and, assuming the Settlement is approved by the Court, will be subject to the Judgment and its associated release.  Stipulation § 2.7.  Upon the date on which the Judgment becomes final, the Class Representatives and each of the Settlement Class Members, including all Participating Claimants, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all "Released State Law Claims" (as defined in the Stipulation and the Class Notice), including all known and unknown state and local law claims based on employment as a Financial Consultant with AGE that accrued during the period ending on the Claim Certification Form Deadline (as defined in the Stipulation) based on the following categories of allegations:  (a) all claims asserted or which could have been asserted in the Litigations (as defined in the Stipulation and Class Notice) which arose under the facts alleged therein and/or under applicable state and local wage and hour laws and regulations; (b) all claims under applicable state and local laws and regulations for the failure to pay any type of overtime compensation or other compensation or wages to Class Members in Covered Positions; (c) all claims under applicable state and local laws and regulations for the failure to provide or pay for meal, break, and/or rest periods for Class Members in Covered Positions; (d) all claims under applicable state and local laws and regulations stemming from or based on the alleged misclassification of employees in Covered Positions as exempt employees, *i.e.*, employees who AGE classified as exempt under applicable state and local laws and regulations from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation executive, administrative, or professional exemptions; (e) all claims, including without limitation state statutory and common law claims, alleging the unlawful or improper imposition, deduction or chargeback of, or failure to reimburse, indemnify, cover or pay for costs or penalties for cancelled or broken trades or errors or mistakes of Class Members in Covered Positions, including without limitation, claims for improper trading error chargebacks or deductions; (f) all claims, including without limitation state and local statutory and common law claims, alleging the unlawful or improper imposition, deduction or chargeback of, or failure to reimburse, indemnify, cover or pay for business expenses, costs and deductions of or related to Class Members in Covered Positions, including without limitation, expenses, costs and deductions for support staff, marketing,

- 18 -

advertising or promotional expenses, seminar costs, training costs, telephone charges, ticket charges, mailing costs, subscriptions, office supplies, office equipment, desk fees, license and registration fees, client fees, costs to settle disputes with customers, or account fees for delinquent customer accounts, and claims for allegedly improper deductions from or chargebacks to compensation for such business expenses and costs under applicable state and local laws and regulations; and (g) all claims for penalties or additional damages which allegedly arise from the claims described in (a) through (f) above under any applicable law or regulation.  Stipulation §§ 1.42, 2.9.1 & Exh. 3 at 6-7.

Class Members who do not opt out of the Settlement Class may elect to become "Participating Claimants" and receive a payment under the Settlement by properly completing and timely submitting both of the following forms that are attached to the Class Notice:  (a) Form D, entitled "Consent to Join Settlement Form" and (b) Form C, entitled "Settlement Claim Certification Form."  Stipulation §§ 1.35, 2.7.4 & Exh. 3 at 8.  Class Members who properly and timely submit both forms will receive a settlement payment in an amount determined pursuant to a formula developed by the Settling Parties, reviewed and recommended by the Special Master, and approved by the Court.  The formula may take into account such factors as:  (a) the Class Member's Compensable Months (*i.e.*, the calendar months a Class Member was actively employed as a Financial Consultant in a state other than California for more than 15 days during the applicable Class Period); (b) the relative merits of the state law claims asserted on behalf of the Class Members working in different states; and (c) differences in the applicable wage and hour laws and statutes of limitation in each state.  The formula will be designed to result in the complete distribution of the Net Settlement Amount based on the assumption that all Class Members become Participating Claimants.  In addition, the first $500,000 of any portion of the Maximum Settlement Amount not approved and awarded by the Court or claimed by Participating Claimants pursuant to the Stipulation shall be added to the Net Settlement Amount and distributed among the Participating Claimants; and any additional portion of the Maximum Settlement Amount not approved and awarded by the Court or claimed by Participating Claimants pursuant to the Stipulation shall remain the exclusive property of AGE.  Stipulation § 2.3.1.

All Class Members who elect to become Participating Claimants shall, upon the date on

which the Judgment becomes final, be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged, in addition to all "Released State Law Claims" as explained above, all "Released Federal Law Claims" (as defined in the Stipulation and the Claim Form), including all known and unknown claims arising under the FLSA based on employment as a Financial Consultant with AGE that accrued during the period ending on the Claim Certification Form Deadline (as defined in the Stipulation). Stipulation §§ 1.43, 2.9.2 & Form C at 3-4.

The Maximum Settlement Amount AGE will pay under the terms of the Stipulation is $12,000,000, plus interest accruing on that amount at a rate equal to the 26 week Treasury Bill rate beginning on the date the Stipulation is executed, and continuing through the date those funds are paid out as provided in the Stipulation and described below. Stipulation §§ 1.24, 2.2. This Maximum Settlement Amount will be used to pay: (a) the timely claims of Class Members; (b) the Plaintiffs' attorneys' fees and litigation costs; (c) the individual Enhancements of the Class Representatives; (d) the fees and costs of the Claims Administrator; (e) the fees and costs of the Special Master; and (f) any other Administrative Costs. Stipulation § 2.2.2. After deducting from the Maximum Settlement Amount for attorneys' fees, litigation costs, individual Enhancements of the Class Representatives, fees and costs of the Claims Administrator and the Special Master, and other Administrative Costs, from the remaining amount (the "Net Settlement Amount"), AGE will make a settlement payment to each Participating Claimant according to the formula described above. Stipulation §§ 1.1, 1.25, 1.35.

The Stipulation provides that Plaintiffs' attorneys may request, and AGE will not oppose, an amount allowed by the Court not to exceed $3,000,000 plus a prorated share of the interest on such amount (25% of the Maximum Settlement Amount) as payment in full for all attorneys' fees, which amount is consistent with the Ninth Circuit benchmark, and up to $100,000 for all allowable litigation costs and expenses. Stipulation § 2.10.1. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (holding that the benchmark attorneys' fee award in common fund cases is 25% of the fund). In addition, Plaintiffs' attorneys may request, and AGE will not oppose, Enhancement payments not to exceed $10,000 for each Class Representative for the efforts of the Class Representatives in the Litigations. Stipulation § 2.10.2. Each Class

08 CV 0338 JAH (NLS)

Representative shall be required to sign a full release of the Class Representatives' Released Claims set forth in Section 1.12 of the Stipulation in exchange for receiving his Participating Claimant payment and Enhancement payment. Stipulation §§ 1.12, 2.10.2. All of the fee and Enhancement payments are subject to the Court's approval.

The Stipulation provides for AGE to provide notice of the Settlement to the Attorney General of the United States and the appropriate State official of each state in which any Class Member resides in compliance with the requirements of CAFA, 28 U.S.C. § 1715. Stipulation § 2.6.11 & Exh. 4.

Finally, the Stipulation provides for a final approval hearing on the fairness and adequacy of the proposed Settlement, the allocation of the Net Settlement Amount among Participating Claimants, the plan of distribution, Plaintiffs' attorneys' request for attorneys' fees and costs, the Enhancement payments to the Class Representatives, and the administrative costs. Stipulation §§ 1.47, 2.5.4, 2.8.1 & Exh. 3 at 10. The date of the final approval hearing will be set by the Court to take place on or about the date which is fifty-five (55) days after the Notice Response Deadline. Stipulation § 1.47. The Class Notice will advise Class Members of the final approval hearing and their opportunity to attend the hearing and make their views known. At the final approval hearing, the Parties will address any issues raised by Class Members, and the Court will have a second opportunity to review the Stipulation and Settlement before deciding whether to issue final approval. Stipulation §§ 1.47, 2.5.4 & Exh. 3 at 10.

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The policy of the federal courts is to encourage settlements before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). "Litigation settlements offer Parties and their counsel relief from the burdens and uncertainties inherent in trial. ... The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Id.* The "overriding public interest in settling and quieting litigation ... is particularly true in class action suits." *Id.* at 1229. *See also In re Exxon Valdez*, 229 F.3d 790, 796 (9th Cir. 2000) (noting the "strong judicial policy of encouraging settlement in class actions.")

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for any

08 CV 0338 JAH (NLS)

settlement of a class action.  As explained in the MANUAL FOR COMPLEX LITIGATION, THIRD, court approval of a class action settlement is a two-step process:

> First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. ... If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.*, § 30.41; *cf. Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district court's use of a preliminary approval process).  Thus, preliminary approval should be granted if the proposed settlement falls "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS, § 11.25 (4th Ed. 2002).  As the Second Circuit stated, preliminary approval is "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).  *See also Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (preliminary approval hearing determines whether there is "probable cause" to notify the class of the proposed settlement).

Here, all of the pertinent factors weigh heavily in favor of granting preliminary approval. First and foremost, the proposed Settlement was the product of arms-length, non-collusive negotiations.  Plaintiffs and the putative Class and collective action members are and have been represented by experienced counsel.  Both sides have sufficient familiarity with the facts of the case and the relevant legal issues to make an informed recommendation about the fairness of the Settlement.

In addition, under the terms of the Settlement, there are no segments of the Class or collective action that will receive unduly preferential treatment.  All Class Members are subject to the same notice and claims procedures and eventual release of claims.  As noted above, the Parties request that the Court appoint the Honorable Charles A. Legge as a Special Master to review the Parties' proposed allocation of Settlement proceeds, and ultimately to make an independent written recommendation to the Court as to a settlement allocation that is fair and reasonable, taking into

account such factors as: (a) the Class Member's Compensable Months (*i.e.*, the calendar months a Class Member was actively employed as a Financial Consultant in a state other than California for more than 15 days during the applicable Class Period); (b) the relative merits of the state law claims asserted on behalf of the Class Members working in different states; and (c) differences in the applicable wage and hour laws and statutes of limitation in each state. Stipulation § 2.3.1. Such appointment is within the Court's authority under Rule 53 of the Federal Rules of Civil Procedure, which provides that a court may appoint a master to "perform duties consented to by the Parties." Fed. R. Civ. P. 53(a)(1)(A). *See, e.g., Mobil Oil Corp. v. Altech Industries, Inc.*, 117 F.R.D. 650 (C.D. Cal. 1987) (jury trial could properly be presided over by a special master pursuant to Parties' stipulation). Notably, in a recent case involving overtime and deduction claims of current and former financial consultants of UBS Financial Services Inc., entitled *Glass, et al. v. UBS Financial Services Inc.*, Case No. C-06-4068-MMC (N.D. Cal.), the court appointed Judge Legge as Master for purposes of determining whether the settlement distribution formula was fair. Judge Legge approved of the Parties' settlement formula and, ultimately, the Court approved the Parties' settlement. *Glass*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007).

With respect to the Class Representatives' Enhancement payments of up to $10,000 per Class Representative, this award is limited and well within the range of such awards commonly provided in litigation of this nature, and is less than the enhancement payments of $25,000 each that this Court recently awarded to the class representatives in the *Takacs* action. (*Takacs* Docket No. 227.) In light of the modest nature of these awards in comparison to the overall maximum amount of the Settlement, there is nothing to suggest that the Class Representatives' enhancement awards are improper or undermine the apparent fairness of the Settlement.

Furthermore, as the substantial settlement payment attests, there was no collusion between AGE and the Plaintiffs' attorneys to reach this Settlement. AGE has agreed not to oppose any requests for attorneys' fees and costs up to 25% of the Maximum Settlement Amount; however, that amount is the "benchmark" in the Ninth Circuit. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989). The Parties' agreements relating to attorneys' fees and the Class representatives' enhancement awards, as well as all other aspects of the Settlement, have been fully

disclosed to the Court. The Parties have submitted a copy of the complete Stipulation and all of its attachments with this motion, and the Parties have no other undisclosed agreements concerning the terms and conditions of this Settlement.

Additionally, the proposed Class Notice and proposed form of distribution is more than adequate; it is robust. Rule 23 requires that the absent Class Members receive the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The method and the content of the notice to Class Members should be designed to fairly apprise them of the terms of the proposed Settlement "in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Along these lines, federal courts have held that individual mailings to each Class Member's last known address is a sufficient form of notice. *See, e.g., White v. National Football League*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).

Here, the proposed form of notice will be sent via first-class mail to the last known address of each Class Member according to AGE's records, but prior to mailing the Class Notices, the Claims Administrator will consult the United States Postal Service's National Change of Address Database to review the accuracy of and, if necessary, update a Class Member's mailing address. Stipulation § 2.6.4. In addition, in the event that any Class Notice is returned to the Claims Administrator as undeliverable, the Claims Administrator will perform a standard "skip trace" in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, re-send the Class Notice and other Settlement documents to the new address. Stipulation § 2.6.8. While that notice would clearly be sufficient, the Parties agreed to more. The Claims Administrator will also send a reminder postcard to those Class Members who have not responded to the Class Notice by 30 days before the response deadline. Stipulation § 2.6.9. Finally, in addition to the mailing of the Class Notice to all Class Members and the reminder postcard, notice of the Settlement will be published in the national edition of the *Wall Street Journal*. Stipulation § 2.6.10. These efforts to notify all Class Members of the Settlement go well beyond what courts have found to be sufficient in similar cases.

08 CV 0338 JAH (NLS)

The Class Notice will provide the details of the case, the proposed Settlement, and the specific options available to Class Members.  In particular, it will inform Class Members of the Settlement formula developed by the Settling Parties, reviewed and recommended by the Special Master, and approved by the Court.  In sum, the Class Notice will provide Class Members with information from which they can each make an informed decision about whether to opt out, submit a claim form, object, or take no further action.  Stipulation Exh. 3.  Thus, the proposed Class Notice is clearly "adequate."

Finally, within ten (10) days following the filing of the Stipulation with the Court, AGE shall serve upon the Attorney General of the United States and the appropriate State official of each State in which any Class Member resides a notice of the proposed Settlement in compliance with the requirements of CAFA, 28 U.S.C. § 1715, in the form attached as Exhibit 4 to the Stipulation. Stipulation § 2.6.11 & Exh. 4.

## V.    CONCLUSION

For the foregoing reasons, the Plaintiffs and AGE jointly and respectfully request that the Court:  (a) grant preliminary approval of the proposed Settlement memorialized in the Stipulation; (b) grant conditional certification, for settlement purposes only, of the proposed Class and Collective Action; (c) appoint for settlement purposes only (i) Plaintiffs as Class and Collective Action Representatives, (ii) Plaintiffs' counsel as Class Counsel and (iii) The Garden City Group, Inc. as the Claims Administrator; (d) appoint Judge Legge as Special Master pursuant to Fed. R. Civ. P. 53(a)(1)(A) to (i) review and make a recommendation regarding the proposed allocation of the Net Settlement Amount among Participating Claimants and (ii) review and hear any objections with respect to the allocation of the Net Settlement Amount and to make a written recommendation to the Court regarding those objections; and (e) schedule a Notice and Allocation Approval Hearing to occur approximately three weeks after the Court receives Judge Legge's Recommendations to this Court following preliminary approval.

DATED:  March 7, 2008                    WOLF HALDENSTEIN ADLER
                                          FREEMAN & HERZ LLP
                                         JEFFREY G. SMITH
                                         ROBERT ABRAMS

                                         _____/s/  Jeffrey G.  Smith_____
                                         JEFFREY G. SMITH

                                                            08 CV 0338 JAH (NLS)
- 25 -

270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:  212/545/4653
- and-
FRANCIS M. GREGOREK
RACHELE R. RICKERT
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

HOFFMAN & LAZEAR
H. TIM HOFFMAN
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone:  510/763-5700

THIERMAN LAW FIRM P.C.
MARK THIERMAN
7287 Lakeside Drive, Suite 101
Reno, NV 89511
Telephone:  775/284-1500

CARLSON LYNCH LTD
GARY F. LYNCH
36 N. Jefferson Street
Post Office Box 7635
New Castle, PA 16107
Telephone:  724/656-1555
SCHIFFRIN BARROWAY TOPAZ
 & KESSLER, LLP
GERALD D. WELLS
280 King of Prussia Road
Radnor, PA 19807
Telephone:  610/667-7706

Attorneys for Plaintiffs

DATED:  March 7, 2008                    MORGAN LEWIS & BOCKIUS LLP
                                         DARYL S. LANDY
                                         _____/s/ Daryl S. Landy_____
                                         DARYL S. LANDY
                                         2 Palo Alto Square
                                         3000 El Camino Real
                                         Palo Alto, CA 94306
                                         Telephone:  650/843-7561
                                         Facsimile:   650/843-4001

08 CV 0338 JAH (NLS)

- 26 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN LEWIS & BOCKIUS LLP
ANDREW J. SCHAFFRAN
101 Park Avenue
New York, NY 10178
Telephone:  212/309-6380
Facsimile:  212/309-6001

Attorneys For Defendant

AGE:15811.BRF

08 CV 0338 JAH (NLS)