# EXHIBIT A

**U.S. Department of Labor**   Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210



NOV 27 2006

Mr. Ira D. Hammerman
Senior Vice President and General Counsel
Securities Industry Association
1425 K Street, N.W.
Washington, D.C. 20005-3500

Dear Mr. Hammerman:

This is in response to your request for an opinion regarding whether certain "registered representatives" in the financial services industry qualify for the administrative exemption under section 13(a)(1) of the Fair Labor Standards Act (FLSA) and 29 C.F.R. Part 541.[1] Based on a review of the information presented, it is our opinion that the "registered representatives" you describe qualify for the administrative exemption.

You indicate that the actual job titles of the employees in question vary from firm to firm within the securities/financial services industry and include titles such as account executives, broker-representatives, financial executives, financial consultants, financial advisors, investment professionals, and stockbrokers. Our response will refer to the employees in question simply as "registered representatives." Please note, however, that the applicability of the administrative employee exemption depends not on occupational title, job classification, or position description, but rather an individual employee's duties and salary. See 29 C.F.R. § 541.2.

You state that registered representatives and their employing firms must be registered with a self-regulatory organization such as the New York Stock Exchange (NYSE) or the National Association of Securities Dealers (NASD), which, in turn, is supervised and regulated by the U.S. Securities and Exchange Commission (SEC). To become "registered," employees must pass a qualification examination, the most common of which is the "Series 7." The Series 7 examination is administered by the NASD and covers topics such as federal securities laws, SEC and NASD rules, securities products, the operation and interrelation of financial markets, economic theory and kinds of risk, corporate financing, accounting and balance sheet analysis, portfolio theory and analysis, fair sales practices, types of customer accounts, and tax treatment of various investments. Depending on the types of other services they provide, the employees may be subject to additional registration requirements. Once an individual passes the relevant licensing tests, clears the background and employment screening, and becomes fully registered, the employee may provide investment advice to the employing firm's clients, which may include individual investors, sole proprietors, corporations, trusts, partnerships, estates, and other entities that invest in the securities markets.

---

[1] Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov.

You state that the rules of the NASD and the NYSE require registered representatives to conduct diligence into each individual client's financial situation in order to recommend only those securities that are suitable for the client's particular financial status, objectives, risk tolerance, tax exposure, and the like. As you describe their duties, they use their expertise and knowledge of the securities industry and markets to analyze and to interpret the client's investment objectives in light of various factors, and then provide customized and individualized investment advice that is suited to those objectives.

You indicate that, to perform their primary duty of providing investment advice, registered representatives collect, either in person or by telephone, the clients' financial information (including assets, income, debts and other liabilities, cash flow, and tax status), analyze the information, compare and evaluate possible investment options, and identify investment strategies and potential investments based on their knowledge of market conditions and the clients' particular circumstances. They advise their clients on the advantages and disadvantages of various investment opportunities. In order to do this, they must keep apprised of the numerous and varied financial and investment vehicles in the market and the tax and securities consequences to the client of particular investments. Registered representatives must also assess the timing of investments by analyzing market conditions to determine the optimum times to conduct securities transactions for their clients.

As an incident to providing their clients investment advice, registered representatives also bring about the purchase or sale of such investments for their clients and execute the actual transactions that result from their financial advice in a manner that ensures conformity with applicable laws and regulations and other requirements of the employing firm. Registered representatives also engage in promotion and business development activities, including the marketing, servicing, and promoting of the firm's financial services and products, and try to make themselves visible to the appropriate segments of the public in order to meet and to retain potential new clients for their employing firm. You state that, notwithstanding that registered representatives engage in some sales activities, making sales is not their primary duty.

You describe the compensation structure for registered representatives as including a guaranteed minimum salary/draw that meets or exceeds the $455 per week minimum salary requirement for the administrative exemption under the FLSA, coupled with an added component of either (i) commissions, (ii) fees for assets under management, or (iii) some combination thereof, depending upon the type of account of each client being advised. Registered representatives may also earn additional compensation from bonuses. You state that the predetermined amount, referred to as a salary, a draw, or a minimum payment, is never less than $455 per week and is not subject to reduction because of variations in the quality or quantity of the work performed by the registered representative. The second component of compensation from either commissions, fees, or a combination thereof generates additional compensation above the amount provided by the guaranteed minimum draw or salary.

Under the commission model, compensation in addition to the guaranteed salary amount is calculated by formulae that track the transactional fees incurred by the client for securities transactions and reflect the fee that is split between the registered representative and the employing firm—e.g., if a trade results in $1,000 in transactional fees paid by the client, the employing firm may receive $600 and the registered representative is credited with $400. This calculation may also take into account certain adjustments for cancelled trades, trade errors, expenses, and other trading-related losses. Although these adjustments factor into the calculation of commission payments, these adjustments do not affect the payment of the guaranteed minimum amount of at least $455 per week.

In contrast to the commission model, under the fee model, additional compensation for the registered representative is calculated, usually quarterly, by applying a percentage to the total value of the assets in the account being handled by the registered representative; the client does not pay transactional costs per trade. Thus, additional compensation may vary depending on market fluctuations rather than whether additional transactions are executed, and a registered representative might earn additional compensation if the market value of a client's account increases even if no orders or trades are executed with respect to that account.

Under either model, you describe a reconciliation process between the salary/draw and fee/commission components, i.e., the relevant formula for calculating the commissions or fees may take into account the predetermined minimum amounts paid to a registered representative in the current and/or previous pay periods. The formula to calculate commissions may also adjust for cancelled trades, trade errors, expenses, and other trading-related losses, which affect only the calculation of commissions but not the payment of the guaranteed minimum amount of at least $455 per week. You indicate that at no point during his or her employment is the registered representative asked to repay the salary/draw payments if he or she does not earn commissions or fees. Rather, you state the purpose of the calculation is to ensure that registered representatives do not earn additional compensation until the value of their services to the employer reaches a certain point. Furthermore, even if the registered representative's employment terminates and the registered representative has received more in guaranteed compensation than he or she has earned in commission or fee credits, he or she will not be affected monetarily regardless of the circumstances and timing of the termination. Thus, the registered representative at all times is guaranteed and regularly receives not less than the predetermined amount equal to the minimum salary requirement set forth in 29 C.F.R. § 541.600, and often also receives significant additional compensation from commissions or fees.

You seek an opinion on five issues: (1) whether registered representatives who perform the tasks described above have as their primary duty the performance of work directly related to the management or general business operations of the employer or the employer's customers within the meaning of the administrative exemption; (2) whether registered representatives whose tasks consist of those described above have as their primary duty the performance of work that requires the exercise of discretion and

independent judgment with respect to matters of significance within the meaning of the administrative exemption; (3) whether registered representatives who are compensated with a draw plus commission or fee arrangement as discussed above are paid on a salary basis for purposes of satisfying the minimum salary requirement of the administrative exemption; (4) whether a registered representative who performs the duties and has the responsibilities discussed above satisfies the duties test for the administrative exemption even though he or she is paid on a draw plus commission or fee basis; and (5) whether registered representatives who perform the primary duties discussed above and are compensated as described above satisfy the administrative exemption under both the pre-2004 and current regulations.

In response to your first question, FLSA section 13(a)(1) provides an exemption from the minimum wage and overtime provisions for "any employee employed in a bona fide executive, administrative, or professional capacity," as those terms are defined in 29 C.F.R. Part 541. An employee may qualify for exemption if all the regulatory tests relating to duties and salary are met.

Under 29 C.F.R. § 541.200(a), "[t]he term 'employee employed in a bona fide administrative capacity' in section 13(a)(1) of the Act" means "any employee":

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Section 541.203 includes specific examples of occupations that would generally meet the administrative duties test, including in paragraph (b) "[e]mployees in the financial services industry." Such employees are ordinarily considered to meet the duties requirements for the administrative exemption if their duties include:

> work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.

29 C.F.R. § 541.203(b).[2] The preamble to the 2004 revisions to the Part 541 regulations reviewed the pertinent case law drawn from the financial services industry and concluded:

> The Department agrees that employees whose primary duty is inside sales cannot qualify as exempt administrative employees. However, as found by the *John Alden*, *Hogan* and *Wilshin* courts, many financial services employees qualify as exempt administrative employees, even if they are involved in some selling to consumers. Servicing existing customers, promoting the employer's financial products, and advising customers on the appropriate financial product to fit their financial needs are duties directly related to the management or general business operations of their employer or their employer's customers, and which require the exercise of discretion and independent judgment.

*Defining and Delimiting the Exemption for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 21,122, 22,146 (Apr. 23, 2004); see *Hogan v. Allstate Ins. Co.*, 361 F.3d 621 (11th Cir. 2004); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997); *Wilshin v. Allstate Ins. Co.*, 212 F. Supp. 2d 1360 (M.D. Ga. 2002).

You describe the duties of registered representatives as collecting the clients' financial information (including assets, income, debts and other liabilities, cash flow, and tax status), analyzing the information, comparing and evaluating possible investment options, and identifying investment strategies and potential investments based on their knowledge of market conditions and the clients' particular circumstances. They advise their clients on the advantages and disadvantages of various investment opportunities. The registered representatives thus use their expertise and knowledge of the securities industry and markets to analyze and to interpret the client's investment objectives in light of various factors, and then provide individualized investment advice that is suited to those objectives.

Your description of the duties of these registered representatives suggests that they have a primary duty other than sales, because their work includes collecting and analyzing a client's financial information, advising the client about the risks and the advantages and disadvantages of various investment opportunities in light of the client's individual financial circumstances, and recommending to the client only those securities that are

---

[2] You state in your request that, in addition to providing investment advice, registered representatives also bring about the purchase or sale of such investments for their clients and execute the actual transactions that result from their financial advice. Notwithstanding that registered representatives engage in some sales activities, you state that making sales is not their primary duty. An employee's primary duty is defined in 29 C.F.R. § 541.700 as "the principal, main, major or most important duty that the employee performs" based on all the facts in a particular case, with the major emphasis on "the character of the employee's job as a whole," and the amount of time spent performing particular tasks is not the sole test. The fact that some registered representatives receive a fee based on the total value of assets in an account, even if no orders or trades are executed, provides further support for the assertion that their primary duty is not sales.

suitable for the client's particular financial status, objectives, risk tolerance, tax exposure, and other investment needs. Based upon the foregoing, we conclude that these registered representatives satisfy the duties requirement under 29 C.F.R. § 541.203(b).[3]

The registered representatives satisfy the duties requirements of the administrative exemption by performing office or non-manual work directly related to the management or general business operations of the employer, and by performing duties that include the exercise of discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. §§ 541.200(a)(2)-(3); 541.203(b). Similar to the employees discussed in the 2004 preamble in *John Alden*, *Hogan*, and *Wilshin*—all of whom were found to satisfy the duties requirements of the administrative exemption—the registered representatives service their employer's financial services business by engaging in promotion and business development activities, including the marketing, servicing, and promoting of the employing firm's financial services and products, and by making themselves visible to the appropriate segments of the public in order to meet and retain potential new clients for their employing firm. *See Hogan*, 361 F.3d at 626-28 (insurance agents administratively exempt who serviced and advised existing customers, adapted customer's policies to their needs, promoted sales, and hired and trained staff, among other duties); *John Alden*, 126 F.3d at 8-14 (administrative exemption applied to insurance marketing representatives who represented company to third party agents, promoted sales, and kept informed about market to help match products with customer needs); *Wilshin*, 212 F. Supp. 2d at 1376-79 (administrative exemption applied to insurance agent who stayed knowledgeable about market and needs of customers, recommended products to clients, provided claims help, promoted company, and directed day-to-day affairs of the office).

With regard to your second question, the primary duty of the registered representatives you describe includes the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves comparing and evaluating possible courses of conduct and acting or making a decision after the various possibilities have been considered. *See* 29 C.F.R. § 541.202(a); *Farmers Insurance Exchange*, Nos. 05-35080, 05-35145, 2006 WL 3026037 at *1 (9th Cir. Oct. 26, 2006) (exemption applies to adjusters who "use discretion to determine whether the loss is covered, set reserves, decide who is to blame for the loss and negotiate with the insured or his lawyer"). The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. *See* 29 C.F.R. § 541.202(c). You indicate that registered representatives must assess the client's investment objectives, investment experience, and tolerance for risk—significant factors in determining the investment advice the registered representative will provide to the client based on the client's particular circumstances—

---

[3] Of course if, based on all the facts in a particular case, a registered representative's primary duty is selling investments to clients, the registered representative will not qualify for the administrative exemption. 29 C.F.R. § 541.203(b).

and then compare and evaluate possible investment options and render advice only after all the various possibilities have been considered.

The duties of the registered representatives you describe include evaluating the client's individual financial circumstances and investment needs and assessing and comparing the alternatives before making recommendations for investment options to the client, which satisfies this element of the administrative exemption.[4]

With regard to your third and fourth questions, the registered representatives receive a guaranteed minimum predetermined payment that meets or exceeds the $455 per week minimum salary requirement for the administrative exemption. This minimum predetermined amount is not subject to reduction because of variations in the quality or quantity of the work performed. In addition, registered representatives may earn compensation above the guaranteed minimum amount from either commissions or fees or a combination of both.

The regulations allow payments in addition to the minimum salary amount to exempt employees without losing the exemption or violating the salary basis requirement.

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis.

29 C.F.R. § 541.604(a).

The reconciliation process you describe between the formula for calculating excess commissions or fees above the guaranteed predetermined minimum amount does not result in a reduction in the guaranteed predetermined minimum amount paid to the

---

[4] You indicate that in performing their primary duty, registered representatives may utilize computer software and other technology such as asset allocation and portfolio management programs; ultimately, however, the registered representative is responsible for assessing alternatives and making recommendations that best serve each client. The use of such computer software and other tools does not necessarily disqualify an employee from the administrative exemption. Provided that these programs do not select the particular investment alternative for the client and that the registered representative is still responsible for assessing the alternatives and making investment recommendations to the client, the use of technological tools would not mean that the registered representative does not exercise the requisite discretion and independent judgment. See 29 C.F.R. § 541.704; see also Opinion Letter FLSA2006-31 (Sept. 8, 2006) (mortgage loan officers exercise sufficient discretion and independent judgment in recommending mortgage loan products even though they may use certain underwriting software programs to assess risk and to narrow scope of products available).

registered representatives. You indicate that at no point in the registered representative's employment is he or she asked to repay the guaranteed minimum salary/draw payments if he or she does not earn enough credits in excess commissions or fees above the minimum salary/draw amounts. Rather, the registered representative at all times is guaranteed and receives not less than a predetermined amount that equals or exceeds the $455 minimum weekly salary requirement for the administrative exemption. Thus, because the employment arrangement includes a guarantee of at least the required amount paid on a salary basis, the registered representative's compensation structure, as described, meets the salary basis requirements for exemption. *See* 29 C.F.R. § 541.604(a); *see also Hogan*, 361 F.3d at 625 (as long as there is a non-deductible minimum, additional compensation on top of the non-deductible salary is permissible); Opinion Letter FLSA2006-24 (July 6, 2006) (stating that cash shortage deductions from additional compensation, as opposed to from the guaranteed salary, are permissible).[5] A registered representative who performs the duties, and is paid as described above, satisfies the duties and salary tests for the administrative exemption.

Regarding your fifth question, because the criteria in the duties test for the administrative exemption in the 2004 revised final regulations are substantially the same as under the prior rule, the outcome of this opinion would be essentially identical under either version of the regulations. *See Farmers*, 2006 WL 3026037 at *4 ("For starters, § 541.203 does not represent a change in the law. When the DOL promulgated § 541.203, it said that the new regulation 'is consistent with existing section 541.205(c)(5).'"); *Robinson-Smith v. Gov't Employees Ins. Co.*, 323 F. Supp. 2d 12 (D.D.C. 2004); *McLaughlin v. Nationwide Mut. Ins. Co.*, No. Civ. 02-6205-TC, 2004 WL 1857112 (D. Or. 2004).

Based on the foregoing analysis, we conclude that the registered representatives described above satisfy the requirements of the administrative exemption under both the pre-2004 and current regulations.

---

[5] This interpretation of salary basis finds support in a line of Wage and Hour Opinion Letters going back to June 6, 1969. There are other opinion letters, however, that may cause confusion on this point. They suggest that the requirement that a salary basis payment be made "free and clear" is not satisfied under an offset plan where (1) commissions and other payments allocated to the particular pay period do not yield at least the guarantee and the employer makes up the deficiency but makes a corresponding reduction in a subsequent pay period of higher earnings (*see* Opinion Letters of June 2, 1980; February 11, 1980; and March 27, 1969); or (2) the employer adopts an offset method whereby deficits in earned commissions are carried forward or earned commissions are held in reserve (*see* Opinion Letter of May 4, 1971). To the extent these four prior opinion letters are inconsistent with the interpretation of "free and clear" payment on a "salary basis" expressed in this opinion letter, they are hereby withdrawn. It is immaterial what specific terms (draw against commission, draw plus extra compensation, offset method) an employer uses when compensating employees on a fee or commission basis. What matters is that the employee receives no less than the weekly-required amount as a guaranteed salary constituting all or part of total compensation, which amount is not subject to reduction due to the quality or quantity of the work performed, and that the employee is never required to repay any portion of that salary even if the employee fails to earn sufficient commissions or fees. Provided that these requirements are met, the employee will be considered to be paid "on a salary basis" irrespective of any additional sums paid to the employee, such as the amount by which commissions earned for a specific period exceed the total of the weekly guarantee paid for the same period.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that this letter is responsive to your inquiry.

Sincerely,

Paul DeCamp
Administrator