\

# EXHIBIT D

ORIGINAL FILED

OCT 0  2007

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| GARY HANDLER, an individual, on behalf of himself, on behalf of all persons similarly situated, and on behalf of the general public, | LASC Case No: BC343542 |
| Plaintiff, | COURT'S RULING AND ORDER RE: PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |
| v. | Hearing Date: September 20, 2007 |
| OPPENHEIMER & CO., INC., and DOES 1 to 50, | |
| Defendants. | |

## I.

## BACKGROUND

This class action was brought by Plaintiff Gary Handler on behalf of a class of Financial Advisors (FAs) against Defendant Oppenheimer & Co., Inc. ("Oppenheimer") – an integrated financial services holding company. Plaintiff alleges that the putative class members were misclassified as exempt employees, and were required to work in excess of eight hours per day (40 hours per week) without overtime compensation. Further, the Plaintiff alleges that

Ruling and Order on Motion to Certify                    1

Defendant failed to provide appropriate meal and rest breaks as required by prevailing law.
Plaintiff seeks relief under the UCL, Labor Code §§2698-2699 and §203, and compensation for
missed meal and rest breaks per Labor Code §226.7.

Plaintiff seeks certification of four defined subclasses:

Subclass I: (Overtime)

All persons who were employed by Defendant as Financial Advisors in the State
of California – whether paid by commission, by salary, or by part commission and
part salary – who worked more than eight (8) hours in any given day and/or more
than forty (40) hours in any given week during the period of November 28, 2001
through ____ _____ [the date on which the court certifies the class], and who
were not paid overtime compensation pursuant to the applicable Fair Labor
Standards Act. Excluded from this Subclass are those periods of employment
wherein any Financial Advisor served in the capacity of Branch Manager or Sales
Manager for Defendant.

Subclass II: (Meal Breaks)

All persons who were employed by Defendant as Financial Advisors in the State
of California – whether paid by commission, by salary, or by part commission and
part salary – who, at any time during the period of November 28, 2001 through
____ _____ ___ [the date on which the court certifies the class], worked one or
more five-hour increments of time without being given a meal break for each such
increment, and who were not properly compensated therefor[]. Excluded from
this Subclass are those periods of employment wherein any Financial Advisor
served in the capacity of Branch Manager or Sales Manager for Defendant.

Subclass III: (Rest Breaks)

All persons who were employed by Defendant as Financial Advisors in the State
of California – whether paid by commission, by salary, or by part commission and
part salary – who, at any time during the period of November 28, 2001 through
____ _____ ___ [the date on which the court certifies the class], worked one or
more four-hour increments of time without being given a rest break for each such
increment, and who were not properly compensated therefor[]. Excluded from
this Subclass are those periods of employment wherein any Financial Advisor
served in the capacity of Branch Manager or Sales Manager for Defendant.

Subclass IV: (Wage Deductions)
All persons who were employed by Defendant as Financial Advisors in the State
of California – whether paid by commission, by salary, or by part commission and
part salary – who, at any time during the period of November 28, 2001 through
_ _____ _____ [the date on which the court certifies the class], had deductions

taken from their wages, which deductions were not the result of their dishonesty, willfulness or gross negligence. Excluded from this Subclass are those periods of employment wherein any Financial Advisor served in the capacity of Branch Manager or Sales Manager for Defendant.

Further, Plaintiff seeks certification of a UCL class of persons. Plaintiff also seeks appointment of himself as class representative, and appointment of Arias, Ozello & Gignac, LLP; Clark & Markham; and Blumenthal & Nordrehaug as class counsel.

For the reasons discussed *infra*, the motion for class certification is denied.

## II.

## REQUEST FOR JUDICIAL NOTICE

Defendant Oppenheimer requests judicial notice of a November 27, 2007 Opinion Letter issued by the U.S. Department of Labor Employment Standards Administration's Wage and Hour Division, titled "FLSA 2006-43." The request is granted pursuant to Evidence Code §452(c), as an "official act" of the U.S. Department of Labor (an executive department of the United States).

Defendant Oppenheimer also requests judicial notice of a subsequent opinion letter from the same agency, dated January 25, 2007, and titled "FLSA 2007-2". The request is granted per Evidence Code §452(c).

In granting the requests for judicial notice, the Court views the Opinion Letters as persuasive only and not binding to the Court's determination on the motion for class certification.

////
////
////
////

Ruling and Order on Motion to Certify                    3

## III.

## OBJECTIONS TO EVIDENCE

Oppenheimer has lodged objections to the evidence Plaintiff has submitted in support of his motion for class certification. The Court's rulings follow.

### Objections to Declaration of H. Scott Leviant

(1) ¶7 – Sustained.

(2) ¶8 – Sustained.

(3) ¶9 - Sustained.

(4) ¶19 and Exhibit 1 – Overruled.

(5) ¶15 and Exhibit 6 – Overruled.

(6) ¶16 and Exhibit 7 – Overruled.

### Objections to Declaration of Mike Arias

(1) ¶4 at 2:15-16: Sustained on grounds the statement calls for a legal conclusion.

(2) ¶5 at 2:20-23: Overruled.

(3) ¶7: Overruled.

(4) ¶8: Overruled.

(5) ¶10: Sustained.

(6) ¶14: Overruled.

### Objections to Declaration of Gary Handler

(1) ¶7: Overruled.

(2) ¶8: Overruled.

(3) ¶9: Overruled.

(4) ¶10: Overruled.

### Objections to Deposition of Gary Handler (Exhibit 7 to the Leviant Declaration)

(1) Excerpt from 101:15-17: Objection to incomplete response is sustained.

Ruling and Order on Motion to Certify                4

(2) Excerpt from 131:17-23: **Overruled.**

(3) Excerpt from 316:21-25: **Sustained.**

(4) Excerpt from 327:21-25: **Overruled.**

**Objection to Declaration of Steven K. Arcos (Exhibit 6 to Leviant Declaration)**

(1) Excerpt from 24:5-13: Objection to incomplete response is **sustained.**

## IV.

## MOTION FOR CLASS CERTIFICATION

### Standards on Class Certification

CCP § 382 allows the Court to certify a class action "when the question is one of a common interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court..." Additionally, "[t]here must be questions of law or fact common to the class that are substantially similar and predominate over the questions affecting the individual members; the claims of the representatives must be typical of the claims or defenses of the class; and the class representatives must be able to fairly and adequately protect the interests of the class." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App. 4th 224, 237-238.

Stated differently, there are two broad requirements for a class action: 1) an ascertainable class; and 2) a well-defined community of interest. *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 913 (2001).

In determining whether the class is ascertainable, courts consider the size of the class, the class definition, and the means to identify class members. *Reyes v. San Diego County Board of Supervisors*, 89 Cal. App. 3d 1263, 1274 (1987). The community of interest factor is established by showing: (1) predominant common questions of law or fact; (2) class representatives with

claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 435 (2000).

Moreover, California follows the procedures set forth under Federal Rules of Civil Procedure 23 for class actions, whenever California authority is lacking. *City of San Jose v. Superior Court (Lands Unlimited)*, 12 Cal. 3d 447, 453 (1974).

The burden of proof on a motion for class certification is on the party seeking certification. *Washington Mutual Bank, N.A. v. Superior Court*, 24 Cal. 4th 906, 922. This usually requires demonstration of predominance of common issues of law and fact and manageability of the proposed class. *Lockheed Martin Corp. v. Sup.Ct. (Carrillo)* (2003) 29 Cal.4th 1096, 1103-1104; Weil & Brown, *California Procedure Before Trial*, ¶14:99.2 (2006). In making the determination as to whether the requirements for a class action have been met, the court may consider not only the parties' pleadings but also extrinsic evidence, including declarations and discovery responses. Weil & Brown, *California Procedure Before Trial*, ¶14:99 (2006). In this case, the burden falls on Plaintiff Handler to demonstrate that the factors supporting class certification are satisfied. The Court takes the class action considerations in turn.

### a. Ascertainability/Numerosity

The Court must determine whether the class is ascertainable by examining: 1) the class definition, 2) the size of the class, and 3) the means of identifying potential class members. *Richmond v. Dart Indust., Inc.* (1981) 29 Cal.3d 462, 470. While the class must be ascertainable, there is no need to identify its individual members in order to bind them by the judgment. Weil & Brown, *California Procedure Before Trial*, ¶14:24 (2006). No set number is required as a matter of law for the maintenance of a class action. *Hebbard v. Colgrove* (1972) 28 Cal.App.3d 1017, 1030. California case law indicates that as few as ten (10) or twenty-eight (28)

Ruling and Order on Motion to Certify                    6

1  members satisfies numerosity. *Bowles v. Superior Court* (1955) 44 Cal.2d 574; *Hebbard,* 28

2  Cal.App.3d at 1030.

3      While "[a]scertainability is required in order to give notice to putative class members as

4  to whom the judgment in the action will be res judicata" (*see Hicks v. Kaufman and Broad Home*

5  *Corp.* (2001) 89 Cal.App.4[th] 908, 914), "a plaintiff is not required [at the time of the class

6  certification motion] to establish the existence and identity of class members." *Reyes v. Board of*

7  *Supervisors of San Diego County, supra,* 196 Cal.App.3d at 1274. "Ascertainability requires a

8  class definition that is 'precise, objective and *presently* ascertainable.' Otherwise, it is not

9  possible to give adequate notice to class members or to determine after the litigation has

10  concluded who is barred from relitigating." Weil & Brown, *California Procedure Before Trial,*

11  ¶14:23 (2006) (citing *Global Minerals & Metals Corp. v. Sup.Ct. (National Metals, Inc.)* (2003)

12  113 Cal.App.4[th] 836, 858 (emphasis added)).

13      Here, the Court finds that while Plaintiff has identified a group of FAs that is sufficiently

14  numerous to support certification, Plaintiff has failed to provide any means of ascertaining the

15  members of the subclasses he proposes to certify. With respect to numerosity, Plaintiff initially

16  claimed the class numbered 146 persons. As support for this assertion, Plaintiff points to Exhibit

17  10 of the Leviant Declaration – Defendant's Supplemental Response to Plaintiff's First Set of

18  Special Interrogatories. At 2:9-11, Oppenheimer responded that there were 146 Securities

19  Broker employees at its California offices. However, this does not establish (or even help in

20  establishing) the number of subclass members for each classification. Subsequently, in his reply,

21  Plaintiff stated there were 147 class members, based on Defendant's Response to Plaintiff's

22  Special Set of Special Interrogatories.[1] There is no other evidence demonstrating the number of

23  persons in *any* of the four individual subclasses.

24

25  ———    ———    ———

[1] Exh. 19 to Leviant Declaration, submitted in support of Plaintiff's Reply.
Ruling and Order on Motion to Certify                7

Aside from numerosity, Plaintiff also has not established ascertainability. For the reasons discussed *infra*, the Court finds the subclasses of persons are not presently ascertainable because the Court would ultimately have to make fact-intensive, individualized determinations to determine which California FAs ultimately fit into the various subclasses.

Accordingly, Plaintiff Handler has not met his burden of showing the class is sufficiently numerous and presently ascertainable.

### b. Community of Interest

### Common Questions of Law and Fact versus Individualized Assessments

In deciding whether the common question "predominates," and whether a class action would be "superior" to individual lawsuits, the Court will usually consider:

1) The interest of each member in controlling his or her own case personally;

2) The difficulties, if any, that are likely to be encountered in managing a class action;

3) The nature and extent of any litigation by individual class members already in progress involving the same controversy; and

4) The desirability of consolidating all claims in a single action before a single court. Weil & Brown, *Civil Procedure Before Trial*, ¶ 14:16 (citing FRCivPro 23(b)(3)); *see also Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110, 120 and *Newell v. StateFarm Gen. Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101.

Additionally, a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages. *Vasquez v. Superior Court*, 4 Cal.3d 800, 815-816 (1971). However, a class action "will not be permitted...where there are diverse factual issues to be resolved, even though there may be many common questions of law." *Brown v. Regents of Univ. of Calif.*, 151 Cal. App. 3d 982, 988-89 (1984). *See also Basurco v. 21st Century Ins. Co.*, *supra*, 108 Cal.App.4th at 118.

While "[t]he requirement of a community of interest does not depend upon an identical recovery" under *Vasquez v. Superior Court*, 4 Cal. 3d 800, 809 (1971), "a class action cannot be maintained where each member's right to recover depends on facts peculiar to his case." *City of San Jose, supra*, 12 Cal. 3d at 459. "[E]ach member must not be required to individually litigate numerous and substantial questions to determine *his right to recover* following the class judgment." *City of San Jose* at 460 (emphasis added).

Applying these standards, and recognizing that while damages between class members may differ under the "commonality" element (and is not a reason in itself to deny certification), Plaintiff Handler has not met his burden under *Washington Mutual* of showing that common questions of law and fact predominate.

Plaintiff Handler alleges the following questions of law or fact are common to the putative class:

1) Plaintiff and each class member worked for Defendant within the class period;

2) Plaintiff and each class member held at least a Series 7 license to perform their work for Defendant;

3) Defendant did not allow "backlog" orders and required that each day's business be completed each day;

4) Plaintiff and other class members have routinely worked in excess of eight hours each day and forty hours each week for Defendant without overtime compensation;

5) Defendant continues to classify FAs as exempt from overtime laws;

6) Plaintiff and other class members were not required or allowed to take meal and rest breaks and did not receive compensation for missed breaks;

7) Defendant has charged and continues to charge FAs for losses incurred due to trading errors; and

8) class members who received less than the legal overtime compensation and/or were assessed unlawful wage deductions are entitled to restitution of overtime wages and wage deductions under B&P Code §§17200, et seq.

Ruling and Order on Motion to Certify                         9

However, aside from the assertions of "commonality" by Plaintiff Handler in his moving papers and the purported common facts cited above, there is no evidence which demonstrates common questions of fact and law predominate among the class.

The Court would be required to conduct numerous individualized questions under federal law (for the first cause of action) and California law (for the second through fifth causes of action) as to *whether* the putative class members fall within one of the subclasses. At the heart of this case is the Plaintiff's claim that he (and the class) are not exempt from California overtime laws (and are entitled to overtime, as well as meal and rest breaks).

"The [federal] FLSA ['Fair Labor Standards Act'] generally requires covered employers to pay employees at least the federal minimum wage for all hours worked, and overtime premium pay of time-and-one-half the regular rate of pay for all hours worked over 40 in a single workweek. However, the FLSA includes a number of exemptions from the minimum wage and overtime requirements. Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for 'any employee employed in a bona fide executive, administrative, or professional[2] capacity * * * or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of the Administrative Procedure Act * * *).'" 69 F.R. 22122, *22123 (citing 29 U.S.C. 213(a)(1). These exemptions, referred to as the "white collar exemptions", were updated on August 23, 2004. 69 F.R. 22122. The requirements for each of these white collar exemptions are set forth in individual sections of the Code of Federal Regulations (CFR).

Specifically, to qualify for the "executive" exemption, the current regulation under 29 C.F.R. §541.100 requires all of the following:

(1) [that the employee be] [c]ompensated on a salary basis at a rate of not less than $ 455 per week..., exclusive of board, lodging or other facilities;

---

[2] Defendant Oppenheimer is not raising the professional exemption as a defense to either the federal claim or the state claims, and the Court has not considered that exemption in ruling on the motion for class certification.

Ruling and Order on Motion to Certify                    10

(2) [that the employee's] primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) [that the employee] customarily and regularly directs the work of two or more other employees; and

(4) [that the employee] has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

The former regulations, prior to the August 2004 Amendment, required that in order for the employee to be administratively exempt, he would have to be paid a salary or fees of $155 per week, **plus** one of the following: 1) his or her primary duty consists of office or non-manual work directly related to management policies or general business operations of the employer or its customers; 2) he or she customarily and regularly exercises discretion and independent judgment; 3) he or she regularly and directly assists a proprietor or bona fide executive or administrative employee, performs only general supervision specialized or technical work, or executes only under general supervision special assignments and tasks; and 4) or she does not devote more than 20 percent of his or her hours to nonexempt activities.

To qualify for the "administrative" exemption, the current regulation under 29 C.F.R. §541.200 requires all of the following:

(1) [that the employee be] [c]ompensated on a salary or fee basis at a rate of not less than $ 455 per week..., exclusive of board, lodging or other facilities;

(2) [that the employee's] primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) [that the employee's] primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Finally, to qualify for the "outside salesman" exemption under federal law, an employee is exempt if: 1) his or her primary duty is obtaining orders or contracts for services or for the use

of facilities for which consideration will be paid by the client or customer, and 2) he or she is customarily and regularly engaged away from the employer's place or places of business in performing that primary duty. 29 C.F.R. §541.500(a).

In addition to these "white collar" exemptions, federal law provides for a "commissioned sales exemption", where employees working for a retail or service establishment who earn 1.5 times minimum wage and earn more than 50 percent of their income on a commission basis are exempt from overtime eligibility. 29 U.S.C. §§206, 207(i).

California law contains its own set of separate administrative, executive, and professional exemptions under 8 CCR §11040.[3] California law also includes an "outside sales" exemption (8

_____

[3] This regulation provides in applicable part as follows:

1. Applicability of Order This order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, except that:

(A) Provisions of sections 3 through 12 **shall not apply** to persons employed in **administrative, executive, or professional capacities.** The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:

(1) **Executive Exemption** A person employed in an executive capacity means any employee:

(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretion and independent judgment; and

(e) Who is primarily engaged in duties which meet the test of the exemption. .... The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

(2) **Administrative Exemption.** A person employed in an administrative capacity means any

CCR §11040(1)(C), 2(J) (defining "outside salesperson" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities")) and a "commissioned sales" exemption (see, generally, Keyes Motors, Inc. v. Div. of Lab. Stds. Enforcement (1987) 197 Cal.Ap.3d 557; Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 789 (referencing IWC Wage Order 7-80, 2(I), which

---

employee:

(a) Whose duties and responsibilities involve either:

(I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer *or his employer's customers*; or

(II) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

(b) Who customarily and regularly exercises discretion and independent judgment; and

(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in California Labor Code Section 515(c) as 40 hours per week.

1  defines "outside salesperson" as someone who "regularly works more than half the working

2  time" engaged in sales activities outside the workplace).

3        In the Court's view, it is apparent that under Plaintiff Handler's first cause of action for

4  violation of the Unfair Practices Act (based on a violation of the federal Fair Labor Standards

5  Act, 29 U.S.C. §207(a)(1)), the Court would have to conduct an individualized analysis as to

6  whether each of the alleged 147 class members would fit into one of the proposed subclasses. As

7  part of this analysis, the Court would *also* have to make a determination as to whether any of the

8  professional exemptions under federal law applied to one or more of the putative class members.

9  Additionally, under the second through fifth causes of action for, respectively, violation of the

10  Unfair Practices Act, Labor Code §§2698-2699, Labor Code §203, and Labor Code §226.7, the

11  Court would be required to conduct a similar analysis to determine: 1) inclusion in the class; and

12  2) applicability of any of the California exemptions. Defendant Oppenheimer claims it is

13  entitled assert "exempt status" as a defense to the claims by each putative class member.

14        Oppenheimer has filed declarations (conditionally under seal) made by nineteen of its

15  California FAs. These Declarations are all attached to Defendant's filing entitled "Evidence in

16  Support of Defendant's Opposition to Plaintiff's Motion for Class Certification." The

17  declarations shed substantial light on the highly individualized analysis any resolution of the case

18  would require. For example, with respect to Subclass II (dealing with meal breaks), it appears

19  that the FAs schedules are fairly flexible, and that the FAs, in essence, set their own hours.[4]

20  Mr. Carey states, for example, that the amount of time he spends at the office is "entirely at [his]

21  discretion."[5] Mr. Chiate says he "takes breaks whenever [he] want[s]", and nobody keeps track

22  of whether or not he is in the office.[6] Richard Church says that his schedule is "entirely up to"

23

_____

24  [4] See, e.g., Carey Declaration, ¶5; Chiate Declaration, ¶5; Lew Declaration, ¶7, and Wilson Declaration, ¶¶5-7.

25  [5] Carey Declaration, ¶5 (Attachment 3).

[6] Chiate Decl., ¶5 (Attachment 4).

Ruling and Order on Motion to Certify                    14

him.[7]  Neil Kneitel states that he "determine[s] [his] own hours."[8]  Michael Lemkin says he "take[s] meal breaks and rest breaks wherever and whenever [he] want[s]."[9]

Further, the Court is satisfied that under existing law the specific duties of the FAs must be examined on a case-by-case basis in order to determine whether one or more of the exemptions under federal or California law apply.  For instance, the administrative exemption applies to employees whose work "is directly related to management policies or general business operations of the employer or its customers." 29 C.F.R. §541.2(a)(1).  Importantly, "[a]n employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers…for example, employees acting as *advisers or consultants to their employer's clients or customers* (as tax experts or financial consultants, for example) *may be exempt.*" 29 C.F.R. §541.201(c) (emphasis added).  Importantly, the fact that this regulation uses the word "may," as opposed to "shall," provides further support for the notion that the exemption cannot be determined on a uniform, classwide basis without individualized determinations. Federal law also has also interpreted "administration work" to include clients and managing client relationships as the bulk of the employer's business operations.  *Hogan v. Allstate Ins. Co.* (11th Cir.2004) 361 F.3d 621, 627-628; *Piscione v. Ernst & Young, LLP* (7th Cir. 1999) 171 F.3d 527, 540.

The Declarations submitted with the Opposition illustrate the individual determinations the Court would have to make in order to determine whether the administrative exemption

---

[7] Church Decl., ¶4 (Attachment 5).

[8] Kneitel Decl., ¶5 (Attachment 11).

[9] Lemkin Decl., ¶7 (Attachment 12).

Ruling and Order on Motion to Certify                      15

39

applied to the putative class members.  The relationships between the FAs and their customers are set forth in several declarations.[10]

Moreover, the FAs cannot be characterized as a homogenous group of persons which "sell financial products" or which can be labeled "salespersons" so as to fall outside the salesperson exemptions.  It is apparent that the duties of the FAs differ.  For example, Larry Isaacs testified in deposition that executing transactions and selling products to a client are two different things, and that the manner in which FAs serve their clients differs between financial advisors.[11]    To determine the duties of any given FA, the Court would have to make highly individualized determinations.

With respect to the federal "outside sales" exemption, the Court would also have to conduct an individualized analysis. The January 25, 2007 Opinion Letter issued by the U.S. Department of Labor Employment Standards Administration's Wage and Hour Division (entitled FLSA 2007-2)[12] states that the term "customarily and regularly", as used in 29 C.F.R. 541.02, does not mean that "a task be performed more than once a week or that a task be performed each and every workweek."[13]  The Opinion Letter does state that it is only applicable to the facts and circumstances described in the request for an opinion, and that existence of any other factual or historical background not contained in the letter "might require a conclusion different from the

---

[10] See, e.g., Attachment 13, Lemkin Decl., Exh. 5 ("I spend a significant amount of maintaining strong personal relationships with my clients by keeping in touch over the telephone and email"); Attachment 14, Mazur Declaration, ¶4 ("I market investment services directly to clients"); Attachment 18, Usinowicz Declaration, ¶4 ("Most of my clients are individuals, or accounts held in the names of individuals, such as trusts and 401(k) plans"); Attachment 20, Declaration of Steven Wilson, ¶4 ("We market our services to our clients....We focus on individual clients rather than corporate or pension plans.")

[11] See Evidence in Support of Defendant's Sur-Reply, Exhibit C at 39:21-24 (stating that there are financial advisors who do not sell various financial products from Oppenheimer's product platform to clients) and 42:3-6 (noting that it is accurate to say that the manner in which they serve their clients differs from financial advisor to financial advisor).

[12] Exhibit 1 to the Request for Judicial Notice ("RJN") submitted in support of Oppenheimer's Surreply.

[13] RJN in Support of Surreply at 3, citing 69 Fed. Reg. at 22, 187.

Ruling and Order on Motion to Certify                16

one expressed" in the letter.[14] Nevertheless, the letter is persuasive authority with respect to interpreting the "outside sales" exemption under federal law.[15] The Declarations submitted by Oppenheimer demonstrate that FAs leave the office in different intervals to conduct business with clients.[16] Accordingly, this too presents another issue calling for individualized determinations as to whether the outside sales exemption is satisfied.

*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440 is on point. There, the trial court decertified a subclass of account managers who had been classified by IKON as exempt from California overtime laws. The trial court had concluded that common issues of fact and law did not predominate under CCP §382 because the circumstances of each manager's employment differed significantly from every other manager's. The court held that substantial evidence supported the trial court's conclusion because deposition testimony indicated that the performance of daily tasks, including the amount of time engaged in sales activities, varied significantly among the managers. *Walsh, supra*, at 1456.

The Court of Appeal affirmed, finding that substantial evidence supported the trial court's finding of a lack of commonality. The Court noted that "IKON presented evidence, from deposition testimony of appellant...and others, that the performance of ... tasks varied significantly from individual to individual and from office to office, based on the account territory, number of customers and job orders, support from customer service representatives (CSR's), and the personal approach of each account manager to the job and customers." *Walsh* at 1454. As such, the *Walsh* court determined there "was a sufficient evidentiary basis from

---

[14] RJN in Support of Surreply at 4.

[15] There does not appear to be a similar "10% rule" for the outside sales exemption under California law. Again, 8 CCR §11040(1)(C), 2(J) applies the outside sales exemption to employees who customarily and regularly work more than half the working time away from the employer's place of business.

[16] See, e.g., Declaration of Nina Johnson, Attachment 9 at ¶5 (spends 10% of her work off-site); Kneitel Declaration, Attachment 11 at ¶8 (spends 70% of time in the office); Terauds Declaration, Attachment 17 at ¶8 (spends ¼ of time in the office and ¼ out of the office).

Ruling and Order on Motion to Certify                17

41

1  which the trial court could reasonably infer that commonality was lacking due to the differences

2  in the subclass members' work circumstances and how they approached their jobs, such that each

3  individual subclass member would have to establish entitlement to damages (liability) as well as

4  the amount of damages." *Id.* at 1456.[17]

5      *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589 (*Bell*) is not persuasive.

6  Plaintiff relies on *Bell* for the notion that the Court need not apply predominance and superiority

7  as factors for class certification, and should *only* look to Federal Rule of Civil Procedure 23 (as

8  opposed to the predominance and superiority factors under California law).  However, *Bell* did

9  not arise on a motion for class certification (it dealt with the right of the plaintiff property owners

10 to opt out of a class settlement with the defendant title insurance companies). California law is

11 clear that courts ultimately must consider the factors of ascertainability, a well-defined

12 community of interest (embodying the predominance, typicality, and adequacy of representation

13 factors, per *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104) , and

14 superiority.  *See Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 773;

15 *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435; CCP §382.

16     To the extent Plaintiff argues that proving the applicability of an affirmative defense (i.e.,

17 an exemption) is on the Defendant, and should not preclude certification, this argument is

18 misplaced.  "The affirmative defenses of the defendant must also be considered [in examining

19 whether common issues of fact or law predominate], because a defendant may defeat class

20 certification by showing that an affirmative defense would raise issues specific to each potential

21 class member and that the issues presented by that defense predominate over common issues."

22

23 [17] In addition to *Walsh*, Defendant Oppenheimer sets forth a litany of trial court cases throughout the state denying certification based on the individualized questions created by analyzing whether the "exempt" status applied to

24 putative class members. *Williams v. AZ3 Inc.,* Case No. 02CC00378 (OC Superior Ct. Feb. 23, 2007); *In re Home Depot Overtime Cases,* No. JCCP4229, 2006 WL 330169 at *7 (Riverside Super. Ct. Feb. 2, 2006); *Harrison v.*

25 *Islands Restaurants,* Case No. 04CC0097, minute order (Orange County Super. Ct. Nov. 3, 2006).  While the Court is not in any way bound by these decisions, the Court believes these cases are persuasive and stand as further support for denying the motion based on the individualized assessments required to make the exemption determination as to each putative class member.

*Walsh, supra,* 148 Cal.App.4th at 1450 (referencing *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 913 and *Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 811). In sum, as in *City of San Jose,* and as in *Walsh,* "subsequent to class judgment, the members would be required to individually prove not only damages, *but also liability." City of San Jose, supra,* 12 Cal.3d at 463 (emphasis added).

The certification of subclass 4 poses an additional problem, in that the proposed definition would require the Court to make a liability determination as to each putative class member to determine membership in the class. While "[a] class may be certified solely for determination of liability issues…, with causation and damages for each class member to be determined in separate trials" (See California Practice Guide, Civil Procedure Before Trial, The Rutter Group, ¶14.103.5 (2006 Supp.), "[a] liability-only class certification may be denied…where there are *defenses that require individualized inquiry* into each class member's claim." California Practice Guide, *supra* (Referencing *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.* (D NJ 1997) 174 FRD 332, 347). In this case, once again, the identification of the class members in subclass 4 would require individualized inquiries that would predominate over any potential common questions.

Even if the Court were to modify the class definition of subclass 4, and allow certification of a subclass of "[a]ll persons who were employed by Defendant as Financial Advisors in the State of California – whether paid by commission, by salary, or by part commission and part salary – who, at any time during the period of November 28, 2001 through the date of certification had deductions taken from their wages" (without regard to whether those deductions were the result of their dishonesty, willfulness or gross negligence), the Court would *still* have to determine whether the FAs satisfied one or more of the exemptions under federal and California law.

Ruling and Order on Motion to Certify                    19

*Ralphs Grocery Co. v. Superior Court* (2003) 112 Cal.App.4th 1090 is instructive. There, a former grocery store manager (Swanson) filed a lawsuit individually and as a putative class representative alleging that the Ralphs, by wrongfully deducting expenses from the incentive bonuses of store managers and other employees, violated, among other statutes, Labor Code §§221, 400 to 410, and 3751, an IWC wage order for nonexempt employees (8 CCR §11070(8)), and failure to pay wages upon discharge in violation of Labor Code §201. Ralphs demurred on the ground that the manager could not state a cause of action because its bonus plan was not unlawful and a good faith dispute existed as to whether the company failed to pay the manager all wages due upon discharge. The trial court overruled the demurrer, and Ralphs petitioned for writ review.

The Court of Appeal denied the writ petition. In doing so, the Court stated in applicable part:

Ralphs is not permitted to require its nonexempt employees to be the insurers of its business losses and expenses. Based on the legislative and administrative policies that protect nonexempt employee wages and prevent deductions from their wages for business losses and expenses not caused by the employee's dishonest or willful acts or gross negligence, as to nonexempt employees, Swanson can pursue his claims for unlawful deductions from wages and unlawful business practices.

However, the Court of Appeal also noted:

For *exempt employees*, as to whom the wage order does not apply (Cal. Code Regs., tit. 8., § 11070, subd. 1(A)), *the result is different*. Nothing in the Labor Code itself, unlike the wage orders applicable to nonexempt employees, expressly prohibits deductions from wages for cash or merchandise shortages. Nor does the calculation of an incentive bonus based on profitability resemble, literally or "in spirit," either the recapture of wages previously paid in violation of section 221 or exacting a cash bond in contravention of sections 400 through 410. Moreover, the policy considerations … are simply not applicable to exempt employees for whom receipt of an incentive bonus based on a previously disclosed profitability formula does not threaten "special hardship" because of unanticipated or unpredictable deductions from their wages. [Citation.] *Ralphs, supra*, at 112 Cal.App.4th at 1105 (emphasis added.).

Ultimately, the Court of Appeal concluded:

Ruling and Order on Motion to Certify                                20

The class Swanson proposes to represent contains a wide range of employees from store managers, like Swanson, to deli managers and "other employees" paid a bonus based on the challenged formula. *At this early stage of the litigation*, it is **unclear** whether the employees in the proposed class are exempt employees as defined by the Commission's wage orders. For example, store managers, like Swanson, may meet the executive exemption if their duties and responsibilities include supervision of other employees, the authority to hire and fire other employees, the exercise of discretion and independent judgment and other specified requirements. In contrast, a deli manager may not have those same duties and responsibilities. Because the extent to which Swanson and the members of the class he proposes to represent are exempt employees *cannot be determined at this point*, the complaint survives Ralphs's challenge on demurrer. *Ralphs Grocery Co.*, 112 Cal.App.4th at 1106-1107.

The Court finds the reasoning from *Ralphs Grocery Co.* is persuasive with respect to its order denying certification of subclass IV. While the *Ralphs Grocery Co.* court determined that it was premature to determine at the *pleading stage* whether the wage deduction class was comprised of exempt employees, the *Ralphs Grocery Co.* court also clearly spelled out the distinction between deducting expenses from non-exempt employees and exempt employees.

The instant case is at a different stage of the litigation. Here again, the evidence before the Court on the motion for class certification demonstrates that the Court would have to individually assess whether one or more of the exemptions apply to the putative class. The Court would have to make this determination before assessing whether the deductions were lawful. The fact that Plaintiff has redefined subclass IV to exclude Branch Managers or Sales Managers from the definition does not change the Court's conclusion (since, as discussed *supra,* the evidence before the Court demonstrates the duties and nature of a Financial Advisor are not homogenous).

For these reasons, the Court determines that individual issues of law and fact predominate over those common to the class.

### Typicality

The purported class representative's claim must be "typical" but not necessarily identical to the claims of other class members. It is sufficient that the representative is similarly situated

so that he or she will have the motive to litigate on behalf of all class members. *Classen v. Weller* (1983) 145 Cal.App.3d 27, 45. Thus, it is not necessary that the class representative have personally incurred *all* of the damages suffered by each of the other class members. *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 228.

This factor is a close call. On the one hand, Plaintiff asserts relief on behalf of four subclasses of Financial Advisors who were allegedly denied rights under the FLSA and California Labor Code. On the other hand, Plaintiff testified that he did not know or care what Oppenheimer's other FAs did or how they were paid (see discussion under "adequacy of representation" factor, *infra*).

Ultimately, since Plaintiff need not have personally incurred the same damages as the other class members, the Court finds his claim is typical of those class members who assert claims accruing through the date of Plaintiff Handler's departure from Oppenheimer. His claims are not typical, however, as to those putative class members whose claims accrued subsequent to his departure from Oppenheimer to the extent the policies and practices of Oppenheimer were changed or modified after his departure.

### Adequacy of Representation

"The primary criterion in determining adequacy of representation is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class." *Simons v. Horowitz*, 151 Cal. App. 3d 834, 846 (1984). Additionally, the class representative must "raise claims reasonably expected to be raised by the members of the class." *City of San Jose, supra,* 12 Cal. 3d at 464). The fiduciary duty must be undertaken free of demonstrable conflicts of interest with other class members. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 625-26 (1997). The "adequacy of representation" requirement has not been precisely differentiated from the typicality requirement. *Caro v. Procter & Gamble, supra,* 18 Cal. App. 4th at 670. Other cases have stated that "adequacy of representation" depends on

Ruling and Order on Motion to Certify                          22

whether plaintiff's attorney is qualified to conduct the proposed litigation and plaintiff's interests are not antagonistic to the interests of the class. *McGhee v. Bank of America* (1976) 60 Cal. App. 3d 442, 450.

The Court finds that while Plaintiffs' counsel (the law firms of Arias, Ozello & Gignac, LLP; Clark & Markham; and Blumenthal & Nordrehaug) are sufficiently qualified to handle the litigation, Plaintiff Handler is not an adequate representative of the putative subclasses. In particular, Plaintiff Handler's statements in deposition affirmatively demonstrate his inadequacy as class representative. The fact Handler stated in his deposition that he "did not care" what the duties of other FAs were raises concerns as to whether Handler can vigorously protect the interests of the class (and even whether Oppenheimer's interests are antagonistic to those of the class). For example, the following interchange occurred between Defendant's counsel and Handler:

> Q. Do you have any information – any other information about how Oppenheimer has worked at any time since you left the company in June, 2003?
>
> A. **I don't care.**
>
> Q. So the answer to my question is no?
>
> A. I guess you can deduct that, yes, very good.
>
> Q. For example, do you have any information about any policies that Oppenheimer has had in force at any time since you left in June, 2003?
>
> A. Nope. **And I don't care.**
>
> Q. Do you have any information about any procedures Oppenheimer has had at any time since you left in June 2003?
>
> A. **Don't care. Nope.**
>
> ....
>
> Q. Are you aware of any other practices that Oppenheimer has had at any time since you left in June, 2003?

Ruling and Order on Motion to Certify                23

A. **No. And I don't care.**[18]

Subsequently, in the deposition, Handler further testifies as to his involvement with "brokers" in the office, as follows:

Q. Are you aware of anybody else at Oppenheimer who ever had the title of broker?

A. I don't know. I never got involved with anybody.

Q. So you're not aware of anyone at Oppenheimer having the title of broker or stockbroker?

A. I can't say yes or no. I didn't – I'm not –
You know, again, I did what I do. I came to the office. I sat in my office.

And what anybody else has, names, titles, I don't care. Didn't – didn't – don't know.[19]

Handler also testifies that he had "no clue" as to how many brokers and financial consultants were employed by Oppenheimer as of the date of his termination in June 2003 or as of today,[20] and that he "[w]ouldn't have a guess" as to whether any other Oppenheimer broker or broker trainee, either current or former, feels he or she has a claim against Oppenheimer.[21] He also "wouldn't have a guess" as to whether brokers and broker trainees are or were happy at the firm.[22] He has "no clue" as to the number of brokers and financial consultants at Oppenheimer who worked overtime from November 2001 until he left in June 2003.[23] He has "no clue" as to how many brokers and financial consultants employed in California during November 2001 to

---

[18] Defendant's Evidence in Support of Opposition, Attachment 1, at 241:13-242:2; 242:20-23 (emphasis added).

[19] Defendant's Evidence in Support of Opposition, Attachment 1, at 248:1-14.

[20] Defendant's Evidence in Support of Opposition at 290:6-14.

[21] Defendant's Evidence in Support of Opposition, Attachment 1, at 292:2-6.

[22] Defendant's Evidence in Support of Opposition, Attachment 1, at 7-12.

[23] Defendant's Evidence in Support of Opposition, Attachment 1, at 308:19-24.

Ruling and Order on Motion to Certify                    24

June 2003 didn't get meal breaks or rest breaks, and that the only person he was concerned about with that subject was himself.[24] These are just a few examples of Handler's testimony which render him an inadequate class representative and raise serious concerns with the Court.

Accordingly, the Court finds that while the law firms of Arias, Ozello & Gignac, LLP; Clark & Markham; and Blumenthal & Nordrehaug are adequate class counsel, Mr. Handler is an inadequate class representative with respect to all four subclasses.

### Superiority

In deciding whether a class action would be "superior" to individual lawsuits, the Court will usually consider:

1) The interest of each member in controlling his or her own case personally;

2) The difficulties, if any, that are likely to be encountered in managing a class action;

3) The nature and extent of any litigation by individual class members already in progress involving the same controversy; and

4) the desirability of consolidating all claims in a single action before a single court. California Practice Guide, Civil Procedure Before Trial, The Rutter Group ¶ 14:16 (2006 Supp.) (Citing FRCivPro 23(b)(3)); see also Basurco, supra, 108 Cal.App.4th at 120 and Newell v. StateFarm Gen. Ins. Co. (2004) 118 Cal.App.4th 1094, 1101.

Further, under California law, a class action is not "superior" where there are numerous and substantial questions affecting each class member's right to recover, following determination of liability to the class as a whole. City of San Jose v. Superior Ct., supra, 12 Cal.3d 447, 459.

Here again, the Court would have to conduct numerous and substantial questions affecting each class member's right to recover, following a determination of liability to the subclasses as a whole. Under these circumstances, a class is not superior under California law.

---

[24] Defendant's Evidence in Support of Opposition, Attachment 1, at 310:14-25.

Ruling and Order on Motion to Certify                                      25

Even taking into consideration the standards under the Federal Rules of Civil Procedure discussed above, a class action is not the superior means for handling this litigation.

The first and third factors are interrelated. Each class member likely would have a strong interest in controlling his or her own case personally, because, if successful, the Financial Advisors would probably be looking at significant sums of money.[25] Again, this is in contrast to the general consumer class action case, where individual class members would not have a strong interest in controlling the litigation. Based on FRCivPro 23(b)(3) and *Schneider v. Vennard*, 183 Cal. App. 3d 1340, 1347 (1986), Factors 1 and 3 weigh against a finding of superiority.

The second and fourth factors are also inter-related. As discussed above, there would be difficulties in managing this class action (given the highly individualized assessments the Court would be required to conduct). It would not be desirable to consolidate all of these claims in a single court under such circumstances.

For these reasons, the Court finds that a class action is not the superior means to handle this litigation.

////
////
////
////
////
////
////
////

---

[25] The Court is cognizant that California case law recognizes that a class action may be appropriate, even for large claims. See California Practice Guide, Civil Procedure Before Trial, The Rutter Group, ¶14:22 (2006 Supp.) (referencing *Collins v. Rocha* (1972) 7 Cal.3d 232, 238 and *Bell v. Farmers Ins. Exch.* (2004) 115 Cal.App.4th 715, 744). Nevertheless, the Court finds that, on the whole, putative class members in this case would have a stronger interest in pursuing their own individual claims.

Ruling and Order on Motion to Certify                26

# III.

## CONCLUSION AND ORDER

The motion for class certification is denied.[26]  Plaintiff has not satisfied his burden of demonstrating that all of the factors for class certification are met under California law.  The Court sets a further status conference in this matter for November xx, 2007 at 9:00 a.m.


Dated: October 9, 2007


CARL J. WEST
Carl J. West
Judge of the Superior Court

---

[26] As an alternative to denying the motion, the Court had considered partial certification of the issue as to whether the occupation of FAs could be exempt from California and/or federal law.  The problem with proceeding in this fashion, however, is that such an order would necessarily require a determination of merits issues before the class itself could be certified.  This result is prohibited under *Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006  (*Home Savings I*); *Home Sav. & Loan Assn. v. Superior Court* (1976) 54 Cal.App.3d 208 (*Home Savings II*); and *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069.

Ruling and Order on Motion to Certify                    27