WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
Jeffrey G. Smith (133113)
Robert Abrams
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
          -and-
Francis M. Gregorek (144785)
Rachele R. Rickert (190634)
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: (619) 239-4599

HOFFMAN & LAZEAR
H. Tim Hoffman (49141)
180 Grand Avenue
Suite 1550
Oakland, CA 94612
Telephone: (510) 763-5700

THIERMAN LAW FIRM P.C.
Mark Thierman (72913)
7287 Lakeside Drive, Suite 101
Reno, NV 89511
Telephone: (775) 284-1500

MORGAN LEWIS & BOCKIUS LLP
Daryl S. Landy
2 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 843-7561
          -and-
Andrew J. Schaffran
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6380

*Attorneys for Plaintiffs*

*Attorneys for Defendant*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CARL J. BASILE, ALLAN B. ROSENTHAL,
DAVID STABILE, PHILIP J. RICHMAN,
JAMES D. NELSON, MARK STEEN, and
TERRY TOBIN, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

          vs.

A.G. EDWARDS & SONS, INC.,

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 08 CV 0338 JAH (RBB)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR FINAL
APPROVAL OF CLASS AND
COLLECTIVE ACTION
SETTLEMENT**

DATE:     August 31, 2009
TIME:     2:30 p.m.
CRTRM:    11
JUDGE:    Hon. John A. Houston

TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND..................................................................................3

        A.      The Litigations, Consolidated Action, And Summary Of The
                Claims At Issue.........................................................................................3

        B.      The Settlement ..........................................................................................5

        C.      The Settlement Terms................................................................................5

        D.      Preliminary Approval of the Settlement ...................................................6

        E.      The Notice Process ...................................................................................7

        F.      The Reaction of Class Members................................................................8

        G.      The Effect of a Recent Third-Party Objector ...........................................8

III.    THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL ................9

        A.      Standard for Approval ..............................................................................9

        B.      All of the Pertinent Factors Counsel in Favor of Final Approval .............10

                1.      The Strength of the Plaintiffs' Case Favors Final Approval........10

                2.      The Risk, Expense, Complexity, and Likely Duration of
                        Further Litigation Favor Final Approval ...................................13

IV.     THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT
        THE TRIAL FAVORS FINAL APPROVAL ..................................................................15

V.      THE AMOUNT OFFERED IN SETTLEMENT FAVORS FINAL APPROVAL.............15

VI.     THE EXTENT OF DISCOVERY COMPLETED AND THE STAGE OF THE
        PROCEEDINGS FAVOR FINAL APPROVAL.................................................................17

VII.    THE EXPERIENCE AND VIEWS OF COUNSEL FAVOR FINAL APPROVAL..........17

VIII.   THE OVERWHELMINGLY POSITIVE REACTIONS OF CLASS MEMBERS
        TO THE PROPOSED SETTLEMENT SUPPORT FINAL APPROVAL........................17

IX.     THERE WAS NO COLLUSION BETWEEN THE PARTIES .........................................18

X.      THE SETTLEMENT CLASS AND COLLECTIVE ACTION SHOULD
        BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY............................................18

XI.     CONCLUSION .........................................................................................................21

TABLE OF AUTHORITIES

PAGE

**CASES**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 691 (1997)........................................................................................................19

*Auer v. Robbins*,
  519 U.S. 452 (1997)........................................................................................................11

*Bachrach v. Chase Investment Services Corp.*,
  No. 06-2785, 2007 U.S. Dist. LEXIS 80927 (D. N.J. Nov. 1, 2007)...........................14

*Bahramipour v. Citigroup Global Markets, Inc.*,
  N.D. Cal. Case No. 04-04440 (N.D. Cal. *transferred* Oct. 20, 2004) ...................16, 17

*Basile v. A.G. Edwards & Sons, Inc.*,
  Case No. 1:06-CV-00833 (N.D.N.Y.) .............................................................................3

*Bell v. Farmers Insurance Exchange*
  137 Cal. App. 4th 835 (2006) .........................................................................................13

*Bellows v. NCO Financial Systems, Inc.*,
  No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)..................................9

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979)................................................................................18

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2003) .........................................................................................18

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ....................................................................................9, 10

*Dean Witter Reynolds, Inc. v. Ross*,
  75 A.D. 2d 373 (1980).....................................................................................................12

*Glass v. UBS Financial*,
  N.D. Cal. 06-4068...........................................................................................................16

*Handler v. Oppenheimer & Co., Inc.*,
  Case No. BC 343542 (Cal. Super. Ct. Oct. 9, 2007) ....................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................................10, 19

*Hein v. PNC Financial Services Group, Inc.*,
  511 F. Supp. 2d 563 (E.D. Pa. 2007).............................................................................11, 15

*In re EBAY Seller Antitrust Litig.*,
  No. C 07-1882, 2009 WL 111550 (N.D. Cal. Jan. 15, 2009).........................................................8

*In re Farmers Overtime Pay Litigation*, (*In re Farmers Ins.*)
  300 F. Supp. 2d 1020 (D. Or. 2003) ............................................................................14

*In re Mego Financial Corporation Securities Litigation*,
  213 F.3d 454 (9th Cir. 2000) ......................................................................................17

*LaVoice v. Citigroup*,
  N.D. Cal. 07-801..............................................................................................................16

*Levy v. Verizon Information Servs., Inc.*,
  498 F. Supp. 2d 586 (E.D.N.Y. 2007) ..........................................................................12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................9, 17

*Miller v. Farmers Insurance Exchange*,
  481 F.3d 1119 (9th Cir. 2007) ................................................................................11, 14

*Officers for Justice v. Civil Service Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .........................................................................................9

*Pachter v. Bernard Hodes Group, Inc.*,
  10 N.Y. 3d 609 (2008)...................................................................................................12

*Perry v. U.S. Bank*,
  No. 00-1799, 2001 WL 34920473 (N.D. Cal. Oct. 16, 2001) ......................................14

*Pontius v. Delta Financial Corp.*,
  No. 04-1737, 2007 U.S. Dist. LEXIS 50980 (W.D. Pa. March 20, 2007)
  *adopted at* 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007) ............................11

*Prachasaisoradej v. Ralphs Grocery*,
  42 Cal. 4th 217 (2007)...................................................................................................12

*Richman v. A.G. Edwards & Sons, Inc.*,
  Case No. 3:06-CV-01453 (D. Or.)...................................................................................3

*Rosenthal v. A.G. Edwards & Sons, Inc.*,
  Case No. 3:06-CV-03995 (D. N.J.) ..................................................................................3

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
  79 F.R.D. 571 (E.D. Pa. 1978)......................................................................................18

*Stabile v. A.G. Edwards & Sons, Inc.*,
    Case No. 06-CV-01360 (W.D. Pa.) .............................................................................3

*Steen v. A.G. Edwards & Sons, Inc.*,
    Case No. 2:07-CV-00147 (W.D. Pa.) ...........................................................................3

*Steinberg v. Morgan Stanley*,
    No. 06-CV-2628 BEN (S.D. Cal. filed Nov. 29, 2006)........................................16, 17

*Takacs v. A.G. Edwards & Sons, Inc.*,
    Case No. 04-CV-1852 JAH (NLS) ..........................................................................4, 13

*Tobin v. A.G. Edwards & Sons, Inc.*,
    Case No. 2:07-CV-00489 (S.D. Oh.).............................................................................3

*Ubalde v. Prudential Secs., Inc.*,
    Case No. BC 245149 (Cal. Super. Ct. Nov. 1, 2004) ................................................14

*Wachovia Sec. LLC Wage and Hour Litig.*
    MDL No. 07-ML-1807, Master File No. SACV 05-1031 (C.D. Cal. filed Oct. 19, 2005)........17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2nd Cir. 2005) .........................................................................................9

*Weaver, et al. v. Edward D. Jones & Co., L.P.*,
    Case No. 08-540 ..........................................................................................................15

## RULES AND STATUTES

Fed. R. Civ. P.
    Rule 23...................................................................................................................18, 20
    Rule 23(a) .............................................................................................................18, 19
    Rule 23 (b)(3)........................................................................................................18, 19

29 C.F.R.
    § 541.200 .....................................................................................................................10
    § 541.203(a).................................................................................................................11

Class Action Fairness Act ...................................................................................................4
28 U.S.C.
    § 1331-32 .......................................................................................................................4
    § 1367 ............................................................................................................................4

Fair Labor Standards Act of 1938 .....................................................................................4
29 U.S.C.
    § 201 *et seq.*.................................................................................................................4
    § 216(b) .......................................................................................................................20

# OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (THIRD),
   § 30.42 (1995)..................................................................................................................9

May 4, 1971 Department of Labor Opinion Letter........................................................................10
Nov. 27, 2006 Department Of Labor Opinion Letter ...................................................................11

# MEMORANDUM IN SUPPORT OF MOTION

## I.      INTRODUCTION

Plaintiffs Carl J. Basile, Allan B. Rosenthal, David Stabile, Philip J. Richman, James D. Nelson, Mark Steen and Terry Tobin (collectively, "Plaintiffs" or "Class Representatives") and Defendant A.G. Edwards & Sons, Inc. ("Defendant" or "AGE") (together, the "Parties") jointly seek final approval of a $12,000,000 collective and class action settlement (the "Settlement"). The terms of the Settlement are memorialized in the Parties' "Joint Stipulation and Settlement Agreement" (the "Stipulation"), filed as attachments 7 through 14 to Docket No. 5[1].

The Settlement was reached on behalf of all individuals in the following collective action (the "Collective Action"):  All individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all or part of the period from July 6, 2003 through April 14, 2009, and on behalf of all individuals in the following class (the "Class"):  All individuals who were employed by AGE in the United States outside the State of California in the position of Financial Consultant, during all or part of the maximum applicable limitations period for the state in which the individual was so employed by AGE (as set forth in Schedule 1 to the Stipulation) through April 14, 2009 (collectively referred to as "Class Members").

If approved by the Court, the Settlement would resolve the instant action, as well as six other class and collective action lawsuits (described below and collectively referred to as the "Litigations"), in which the Plaintiffs allege, *inter alia*, that AGE misclassified the Class Members as exempt from federal and state overtime laws and made deductions from commissions or salary paid to them for certain business-related and other expenses, which Plaintiffs claim are impermissible under state wage and hour laws.  AGE denies the Plaintiffs' allegations and maintains that at all times it properly classified and paid its Financial Consultants in accordance with applicable law.

---

[1]      Unless otherwise specified, "Docket No." shall refer to the docket in the Consolidated Action (defined below in Section II.A.), Case 1:08-CV-00338.  All capitalized terms, unless otherwise defined, shall have the same meaning as set forth in the Stipulation.

1       On June 9, 2008, the Court granted preliminary approval of the Settlement and appointed

2  retired federal judge Charles A. Legge as Special Master, *inter alia*, for the purpose of making an

3  independent recommendation concerning the fairness of the allocation of the Net Settlement

4  Amount among Participating Claimants (as that term is defined in the Stipulation) (Docket Nos.

5  18, 20).   Plaintiffs filed Judge Legge's written recommendation with the Court on January 23,

6  2009 and filed their Unopposed Motion to Adopt Special Master's Report and Order Notice on

7  February 27, 2009.   On April 14, 2009, the Court approved and adopted Judge Legge's

8  recommended allocation plan and authorized the parties to mail the Class Notice (Docket No. 25).

9  On May 14, 2009, the Court entered an order approving the Parties' Revised Class Notice and

10  Settlement Claim Certification Form (Docket No. 28).   Subsequently, the Claims Administrator,

11  The Garden City Group, Inc. ("GCG"), disseminated notice to Class Members.   The Class

12  Members had until August 4, 2009, to opt-out or object to the Settlement, and have until October

13  5, 2009 to become Participating Claimants by filing claims.  As of August 10, 2009 - which is

14  almost two months before the claim filing deadline – approximately 53% of the 8,390 Class

15  Members have already decided to become Participating Claimants, claiming 61.67% of the Net

16  Settlement Amount.   Only 0.29% of Class Members have elected not to participate in the

17  Settlement, and only **one** individual (who is not even a Class Member or a current or former

18  employee of AGE) has objected to the Settlement.  As this reaction and other pertinent factors

19  make clear, the proposed Settlement is fair and reasonable, and final approval is appropriate.

20  Approval of this Settlement will bring a close to the Litigations and allow the claimants to receive

21  significant individual payments without the delay, uncertainty, and risk of further litigation.

22       The Settlement meets the Ninth Circuit's standards for final approval.  First, as discussed

23  below, the Settlement is entitled to a presumption of fairness, since it was reached through

24  arm's-length, non-collusive negotiations between experienced counsel, after a thorough exchange

25  of information and with the assistance of an experienced mediator.  Furthermore, the Settlement is

26  fundamentally reasonable, in light of the novelty and uncertainty of Plaintiffs' claims and the risks

27  and costs associated with further litigation.  Accordingly, the Parties respectfully request that the

28

Court (a) approve the Settlement in its entirety, (b) enter the proposed Order Granting Final Approval of the Settlement; and (c) enter the proposed Final Judgment.

## II.     FACTUAL BACKGROUND

### A.     The Litigations, Consolidated Action, And Summary Of The Claims At Issue

On July 6, 2006, Class Representative Carl Basile commenced a proposed class action against AGE in the United States District Court for the Northern District of New York (the "*Basile* action"). *Basile v. A.G. Edwards & Sons, Inc.*, Case No. 1:06-CV-00833 (N.D.N.Y.). On August 23, 2006, Class Representative Allan Rosenthal commenced a proposed class and collective action against AGE in the United States District Court for the District of New Jersey (the "*Rosenthal* action"). *Rosenthal v. A.G. Edwards & Sons, Inc.*, Case No. 3:06-CV-03995 (D. N.J.). On September 7, 2006, Class Representative David Stabile commenced a proposed class action against AGE in the Court of Common Pleas of Allegheny County, Pennsylvania, bearing G.D. No. 06-020998. On October 11, 2006, AGE removed the case to the United States District Court for the Western District of Pennsylvania (the "*Stabile* action"). *Stabile v. A.G. Edwards & Sons, Inc.*, Case No. 06-CV-01360 (W.D. Pa.). On October 13, 2006, Class Representatives Philip Richman and James D. Nelson commenced a proposed class and collective action against AGE in the United States District Court for the District of Oregon (the "*Richman* action"). *Richman v. A.G. Edwards & Sons, Inc.*, Case No. 3:06-CV-01453 (D. Or.). On February 6, 2007, Class Representative Mark Steen commenced a proposed class and collective action against AGE in the United States District Court for the Western District of Pennsylvania (the "*Steen* action"). *Steen v. A.G. Edwards & Sons, Inc.*, Case No. 2:07-CV-00147 (W.D. Pa.). On May 29, 2007, Class Representative Terry Tobin commenced a proposed class and collective action against AGE in the United States District Court for the Southern District of Ohio (the "*Tobin* action"). *Tobin v. A.G. Edwards & Sons, Inc.*, Case No. 2:07-CV-00489 (S.D. Oh.). The aforementioned actions are herein collectively referred to together with the Consolidated Action (as defined below) as the "Litigations".

After months of discussions and negotiations through counsel experienced in these types of cases, the Parties participated in mediation. Through these mediation efforts, the Parties reached a

Case No. 08 CV 0338 JAH (RBB)

1   proposed conditional settlement of the Litigations.  To effectuate the Settlement of the foregoing

2   Litigations, and pursuant to the Parties' Stipulation, the Plaintiffs in each of the aforementioned

3   actions filed the consolidated complaint in this action on February 22, 2008 in this Court (the

4   "Consolidated Action"), which was designated as related to another class action against AGE in

5   this Court on behalf of Financial Consultants who worked for AGE in the state of California.  *See*

6   *Takacs v. A.G. Edwards & Sons, Inc.*, Case No. 04-CV-1852 JAH (NLS) (S.D. Cal. filed Sept. 15,

7   2004) (the "*Takacs* action").  The case number for the Consolidated Action is 3:08-CV-00338

8   JAH (RBB).

9          In the Consolidated Action, the Plaintiffs alleged, on behalf of a nationwide class of AGE

10   Financial Consultants (excluding Financial Consultants employed in the state of California) that,

11   among other things: (a) Class Members were misclassified as exempt from federal and applicable

12   state wage and hour laws and were not paid the required minimum compensation for overtime

13   hours they worked; (b) Class Members incurred business related expenses for which AGE did not

14   reimburse them as required by law; and (c) Class Members were subject to unlawful deductions

15   from their compensation for, *inter alia*, errors, support staff compensation and business expenses.

16   The Class Representatives asserted, *inter alia*, claims for alleged unpaid overtime compensation,

17   liquidated damages, attorneys' fees and litigation costs under the Fair Labor Standards Act of

18   1938, as amended, 29 U.S.C. § 201 *et seq.* (the "FLSA"); and for alleged unpaid overtime

19   compensation, for alleged failure to reimburse, indemnify, cover or pay for business costs, for

20   alleged unlawful imposition, deduction or chargeback of business costs, and for premium pay,

21   interest, liquidated damages, punitive damages, penalties, restitution, attorneys' fees and litigation

22   costs under applicable state wage and hour laws.  Plaintiffs alleged federal question jurisdiction

23   with respect to their FLSA claims and diversity jurisdiction and supplemental jurisdiction under

24   the Class Action Fairness Act ("CAFA") with respect to their state law claims.  *See* 28 U.S.C.

25   §§ 1331-32, 1367.

26          AGE denies Plaintiffs' allegations in their entirety and maintains that it complied with all

27   applicable state and federal laws with respect to the payment of Class Members.  Specifically, it is

28   AGE's position that its Financial Consultants were properly classified as "exempt" employees and

Case No. 08 CV 0338 JAH (RBB)

- 4 -

paid in accordance with all applicable laws, and that no unlawful deductions were made from their earned wages.

**B.     The Settlement**

On June 13, 2007, after months of discussions and negotiations through Class Counsel and counsel for AGE, the Parties met for a full-day private mediation with Mark Buckstein, a well-regarded and very experienced wage-and-hour class action mediator.   At the conclusion of this mediation, the Parties reached an agreement to settle the Litigations on the terms for which they are now seeking final approval.   The proposed Settlement calls for certification, for settlement purposes only, of a Settlement Class of 8,390 individuals defined as follows:

> All individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all or part of the maximum applicable limitations period for the state in which the individual was employed by AGE (as set forth in Schedule 1 to the Stipulation) through April 14, 2009.

The proposed Settlement also calls for certification, for settlement purposes only, of the following Collective Action:

> All individuals who were employed by AGE in the United States outside the state of California in the position of Financial Consultant, during all of part of the period from July 6, 2003 through April 14, 2009.

This Settlement is the result of the Parties' good-faith, arm's-length negotiations through their respective attorneys, and mediation before a well-regarded and experienced mediator. Plaintiffs and the absent Class Members were represented by law firms with significant experience in directly analogous wage-and-hour class and collective actions.

**C.     The Settlement Terms**

The Settlement provides that the "Maximum Settlement Amount" that AGE shall pay under the terms of the Settlement is the gross sum of $12,000,000, plus interest accruing on that amount (or such lesser amount as may be approved by the Court) at a rate equal to the 26-week Treasury Bill rate beginning on March 7, 2008 (the date the Stipulation was executed), and continuing through the date those funds are paid out as provided in the Stipulation.   *See* Stipulation, §§ 1.24, 2.2.   The payments to be made from this Maximum Settlement Amount include:  (i) payments to Participating Claimants who submit timely and valid claims; (ii) payment

to Class Counsel for their attorneys' fees, subject to Court approval, in a maximum amount of $3,000,000, plus 25% of the interest accrued as described above; (iii) payment to Class Counsel for their litigation costs, subject to Court approval, in a maximum amount of $100,000; (iv) payment to the Claims Administrator, subject to Court Approval, in an amount not to exceed $200,000; (v) payments of individual Enhancements to Plaintiffs, subject to Court approval, of up to a maximum amount of $10,000 for each Plaintiff; (vi) payment to the Special Master of any amount awarded by the Court for his fees and costs; and (vii) payment of any other Administrative Costs (as defined in the Stipulation) awarded by the Court. *See* Stipulation, §§ 1.1, 1.25, 2.2.

As part of the Settlement, the Class Members will release certain state law and federal law claims as set forth in the Stipulation at sections 1.42, 1.43 and 2.9.

### D.    Preliminary Approval of the Settlement

On March 7, 2008, the Parties jointly moved this Court for preliminary approval of the Settlement. *See* Docket No. 5. Following the Parties' submission of their joint motion and a May 12, 2008 hearing with this Court on the motion, the Parties were ordered to submit supplemental briefing addressing the propriety of class certification. *See* Docket No. 10. Plaintiffs submitted their unopposed supplemental briefing on May 30, 2008. *See* Docket No. 15. After considering Plaintiffs' unopposed motion, the Court preliminarily approved the Settlement on June 9, 2008. *See* Docket No. 20. Specifically, the Court found that the Settlement "falls within the 'range of reasonableness.'" *See* Docket No. 20, at ¶ 1. On June 9, 2008, the Court also appointed the Hon. Charles A. Legge (Ret.) as Special Master to prepare a written recommendation concerning the allocation of the Net Settlement Amount among the Participating Claimants. *See* Docket No. 18.

On December 2, 2008, the parties submitted an allocation proposal to Judge Legge. On January 9, 2009, Judge Legge held a hearing with the Parties' respective counsel to discuss the allocation proposal. During the hearing, Judge Legge questioned the Parties about the terms of the Settlement, the rationale for Plaintiffs' allocation proposal, and the data on which Plaintiffs relied. On January 22, 2009, Judge Legge issued his "Recommendations of the Special Master Re: Allocation of Settlement" ("Report"), which Plaintiffs subsequently filed with the Court. *See* Docket No. 21.

Subsequently, on February 27, 2009, Plaintiffs filed an unopposed motion to adopt the Special Master's report, to authorize mailing of the class notice, and to set a date for the final approval hearing. *See* Docket No. 22.  The motion was granted by the Court on April 14, 2009, and a final approval hearing was set for August 31, 2009. *See* Docket No. 25.  Thereafter, on May 8, 2009, the Parties submitted a stipulation pursuant to Local Civil Rule 7.2 approving a revised class notice and settlement claim certification form and extending the Notice Mailing Deadline. *See* Docket No. 26.  The Court granted the Parties' joint stipulation on May 14, 2009. *See* Docket No. 28.

### E.   The Notice Process

Following notice approval, AGE provided the Claims Administrator, GCG, with the name and last-known address for each Class Member.  Prior to mailing the notice packages, GCG ran the addresses through the National Change of Address Database maintained by the United States Postal Service to review the accuracy of the addresses, updated the addresses as necessary, and mailed the Court-approved class notice and accompanying documents to 8,390 Class Members. *See* Declaration of Jennifer Keough ("Keough Decl."), ¶¶ 3-5.  In total, these Class Members had 314,320 Compensable Months (as defined in the Stipulation at section 1.14). *Id.*

Class members had 60 days following the mailing of the Class Notice to submit an "Election to Opt Out of Settlement and Class Action" in order to exclude themselves from the Consolidated Action, the Settlement, and the Settlement Class (as defined in the Stipulation at section 1.45). *See* Stipulation, §§ 1.32, 2.7.2.  Class Members who did not timely submit fully completed and properly executed Opt-Out forms are deemed members of the Settlement Class. *Id.* Class Members who did not opt out of the Settlement had the option to object to the Settlement by submitting written objections to the Court, Class Counsel, counsel for AGE, and the Claims Administrator no later than 60 days following the mailing of the class notice. *See* Stipulation, §§ 1.32, 2.7.3.  Finally, Class Members who did not opt out of the Settlement could become a Participating Claimant by completing, executing, and mailing both of the following forms: (a) a "Settlement Claim Certification Form," and (b) a "Consent to Join Settlement Form," postmarked no later than October 5, 2009, which is 120 days following the mailing of the class notice. *See* Stipulation, §§ 1.4, 2.7.4.

**F.     The Reaction of Class Members**

Of the 8,390 Class Notice packets that were mailed out,  193,848 Compensable Months, or 61.67% of the total of 314,320 available Compensable Months, were claimed by 4,442 Class Members as of August 10, 2009, with two more months for Class Members to submit forms.[2] Keough Decl. ¶ 9.  Moreover, only 25 Class Members (0.29%) opted out of the Settlement.  *See* Keough Decl., ¶ 10.  To date, only one objection has been filed, and the objector is neither a Class Member nor a current or former employee of AGE.  Keough Decl. ¶ 11.  The significant response rate, very low opt-out rate and lack of a single objection from a Class Member provide support for the fairness, reasonableness and adequacy of the proposed Settlement.

**G.     The Effect of a Recent Third-Party Objector**

On July 1, 2009, an individual who identified himself as "Jonathan Lee Riches d/b/a/ Bernard Madoff" filed a motion to intervene as a plaintiff and objected to the proposed Settlement. Docket No. 30; Keough Decl., ¶11.   The Parties' response to Mr. Riches' motion is being filed concurrently herewith.  With all due respect to Mr. Riches, his objection can hardly be taken seriously.  Mr. Riches is not a Class Member and, indeed, never worked for AGE.  Moreover, an internet search reveals some startling facts, namely that Mr. Riches is widely considered the most litigious individual in America.  *See, e.g.,* Scott Michels and Sarah Netter, *World's Most Litigious Man Suing Guinness Book of World Records?,* available at http://abcnews.go.com/ Business/LegalCenter/story?id=7677327&page=1 (Mr. Riches recently filed an action against The Guinness Book of World Records for seeking to include him in their 2010 edition as the record-holder for most lawsuits filed).  *See also In re EBAY Seller Antitrust Litig.*, No. C 07-1882, 2009 WL 111550 (N.D. Cal. Jan. 15, 2009) (stating that Mr. Riches "has made a reputation for himself by filing numerous lawsuits of questionable legitimacy.").   Further, where Mr. Riches filed a recent motion to intervene and objection in another class action settlement before this District, it was determined that "there was no meaningful objection to the proposed settlement."

---

[2]     Since the deadline for postmarking Settlement Claim Certification Forms and Consent to Join Settlement Forms does not expire until October 5, 2009, it is almost certain that additional Class Members will elect to become Participating Class Members and the number and percentage of Compensable Months claimed will increase.

*Bellows v. NCO Financial Systems, Inc.*, No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008).

More importantly, however, there is no indication from Mr. Riches's filing that he is a Class Member who has standing to object.  Indeed, the filing simply alleges that AGE "defrauded me and my family personally," not that Mr. Riches worked for AGE as a Financial Consultant. Mr. Riches also does not indicate in any way (other than his claimed personal grievance against AGE) how this Settlement is inadequate or deficient (which it is not).  Finally, a review of the list of putative Class Members does not reveal Mr. Riches as a Class Member.  *See* Keough Decl., ¶ 11.  Accordingly, there is no sound reason to allow Mr. Riches's objection to stand in the way of this eminently reasonable and appropriate Settlement.

## III.   THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL

### A.   Standard for Approval

There is a strong judicial policy favoring settlements, particularly in complex class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The "universal standard" in evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As the Ninth Circuit has recognized, "the very essence of a settlement is compromise." *Id.* at 624. "'[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citations omitted).

A settlement is presumed to be fair when: (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. MANUAL FOR COMPLEX LITIGATION (THIRD), § 30.42 (1995); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005).  Here, all of the factors giving rise to a presumption of fairness exist.  First, the Settlement was the product of arm's-length, non-collusive negotiations over an extended period of time.  *See*  Declaration of Jeffrey G. Smith in Support of Motion for Final Approval of Class and Collective Action

Settlement and Motion for an Award of Attorneys' Fees, Litigation Expenses, and Plaintiff Enhancements ("Smith Decl."), ¶ 10.  Second, Plaintiffs are represented by experienced counsel. Smith Decl., ¶¶ 7-8.  Third, before and during settlement negotiations, the parties exchanged a significant amount of information, both formally and informally.  Smith Decl., ¶ 10.  Both sides were thoroughly familiar with the facts of the case and the relative strengths and weaknesses of the claims and defenses, and consequently, were able to make an informed recommendation about the fairness of the Settlement.

Further, the Ninth Circuit has articulated the following factors that must be considered in evaluating the fairness of a settlement:  "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In addition, the Court should satisfy itself that the settlement is not the product of collusion between the plaintiffs and the defendant. *Class Plaintiffs*, 955 F.2d at 1290.  Here, each factor weighs in favor of final approval.

### B.   All of the Pertinent Factors Counsel in Favor of Final Approval
#### 1.   The Strength of the Plaintiffs' Case Favors Final Approval

Although Plaintiffs believe strongly in the merits of their case, they concede that this case involves novel theories and unsettled questions of law.  Plaintiffs contend that AGE's Financial Consultants are entitled to overtime compensation because they do not meet the test for exempt status under the FLSA.  Conversely, AGE contends that Financial Consultants are exempt under a number of exemptions, including but not limited to, the FLSA's "administrative" exemption.  In order to qualify for the administrative exemption, Financial Consultants must, *inter alia*, be paid on a salary or fee basis, and their primary duty must be administrative in nature.  29 C.F.R. § 541.200.  One of the key disputes in this case is whether the guaranteed monthly payment that AGE paid its Financial Consultants qualifies as a "salary" for purposes of the salary basis test.  A May 4, 1971 opinion letter from the U.S. Department of Labor ("DOL") suggests that a monthly draw does not qualify as a salary, but on November 27, 2006, the DOL withdrew that letter and

Case No. 08 CV 0338 JAH (RBB)

opined that a guaranteed draw meets the salary basis test provided that the amount of the draw does not fall below the FLSA's minimum salary threshold. *See* Nov. 27, 2006 Opinion Letter, Smith Decl., Ex. 3, pages 7-8 and n.5. The November 27, 2006 DOL Opinion Letter is significant because the salary basis test is a "creature of the Secretary [of Labor]'s own regulations," and the DOL's interpretation is controlling "'unless plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal citations omitted). At least one district court has relied on the letter to hold that a draw-versus-commission plan does, in fact, meet the FLSA's salary basis test. *Pontius v. Delta Financial Corp.*, No. 04-1737, 2007 U.S. Dist. LEXIS 50980, *20-22 (W.D. Pa. March 20, 2007) *adopted at* 2007 U.S. Dist. LEXIS 34393 (W.D. Pa. May 9, 2007). In this case, AGE has consistently taken the position that it provides its Financial Consultants with a guaranteed monthly payment that satisfies the FLSA's minimum salary requirement. In light of the DOL Opinion Letter, Plaintiffs face a substantial risk that a court might rule that AGE meets the salary basis test.

The parties also dispute whether Financial Consultants meet the "duties" test of the administrative exemption. Plaintiffs contend that the primary duty of a Financial Consultant is to sell financial products, which they contend is non-exempt work. *See* 29 C.F.R. § 541.203(a). On the other hand, AGE contends that a Financial Consultant's primary duty is to analyze the customer's financial information and advise the customer about which financial products best meet the customer's needs, which they contend is exempt work. In its November 27, 2006 letter, the DOL opined that stockbrokers meet the duties test of the administrative exemption even though they spend some of their time selling financial products. *See* Nov. 27, 2006 Opinion Letter, pages 5-6 and n.2. The Ninth Circuit recently signaled an inclination to defer to the DOL when interpreting the duties test of the FLSA's administrative exemption. *See Miller v. Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007) (reversing an award of $52.5 million in overtime pay to a class of Farmers claims adjusters, relying in part on a DOL opinion letter holding that claims adjusters are administratively exempt under the FLSA). In addition, at least one district court has held that stockbrokers are administratively exempt under the FLSA. *Hein v. PNC Financial Services Group, Inc.*, 511 F. Supp. 2d 563, 575 (E.D. Pa. 2007). In light of these

1    authorities, Plaintiffs' FLSA claims are uncertain[3].

2           Plaintiffs' wage deduction and reimbursement claims are also uncertain.  Plaintiffs contend

3    that no federal or state court has decided definitively whether a brokerage house may deduct

4    business expenses from the commissions of its stockbrokers.[4]  But there is very little case law on

5    point.  On the other hand, AGE contends that, under its applicable compensation plans, Class

6    Members' commissions did not become "earned" until business expenses were factored into their

7    calculation, and that it is not illegal to take business expenses into consideration in the calculation

8    of commissions or incentive compensation.  *See, e.g., Pachter v. Bernard Hodes Group, Inc.*, 10

9    N.Y. 3d 609, 618-19 (2008) (New York law allows employers to make adjustments for business

10   expenses as part of the calculation of commissions); *Prachasaisoradej v. Ralphs Grocery*, 42 Cal.

11   4th 217 (2007) (in certain cases, an employer may lawfully deduct certain business costs from its

12   employees' compensation formula); *Levy v. Verizon Information Servs., Inc.*, 498 F. Supp. 2d 586,

13   600-03 (E.D.N.Y. 2007) (under New York and Pennsylvania law, where an incentive

14   compensation formula includes adjustments at the end of a production period, compensation does

15   not qualify as earned "wages" until after such adjustments are made); *Dean Witter Reynolds, Inc.*

16   *v. Ross*, 75 A.D. 2d 373, 381 (1980) (New York appellate court held that a brokerage firm could

17   offset trade errors and certain other business expenses as part of the calculation of incentive pay

18   for stockbrokers without violating New York Labor Law because the incentive pay did not

19   become "earned" until "all appropriate adjustments were made in conformity with the incentive

20   production plan.").

21          Thus, although Plaintiffs believe strongly in the merits of their case, the outcome was far

22   from certain given the unsettled state of the law.  Therefore, the 'strength of plaintiffs' case' factor

23   weighs in favor of settlement.

24

25

---

26   [3]    As state overtime laws, including applicable exemptions, are generally consistent and
     overlap with the FLSA, Plaintiffs' state overtime claims are likewise uncertain.

27   [4]    The Plaintiffs contend that the closest case is *Takacs,* in which the district court held that
28   the legality of certain wage deductions was a triable issue of fact. *See, supra,* § II.A.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval

This dispute is comprised of seven separate class and/or collective action cases brought on behalf of approximately 8,390 Class Members in 50 separate jurisdictions.  If this case had not settled, class certification, discovery, and trial preparation would have been extremely time consuming and expensive.

First, the motion for class certification would have been hotly contested.  For example, in the *Takacs* action, which involved a California class of only 1,300 members, the class certification briefs and exhibits were over two feet thick and included declarations and deposition testimony from nearly 200 witnesses.  (*Takacs* settled before the court ruled on the motion.)  *See Takacs* action, Case No. 04-CV-1852 (S.D. Cal. filed Sept. 15, 2004).  Here, a contested class certification motion also would have been complex.  Second, if the Court granted Plaintiffs' motion and certified the Class, AGE could have sought to take the depositions of, at a minimum, a representative cross-section of Class Members.  In a putative class of this size, involving as it does 8,390 Class Members from 50 separate jurisdictions with different laws concerning, *inter alia*, overtime and deductions, this could easily have entailed several hundred Class Member depositions, if not more, which would have been extremely costly and time-consuming.  Third, even if discovery proceeded smoothly, the seven litigations would not have been ready for trial until at the very earliest 2010, and even if Plaintiffs won, AGE could have appealed, thereby delaying payment to the class for several years.  Smith Decl., ¶ 11.

The history of the two lawsuits against Farmers Insurance Exchange aptly illustrates the risk, delay, and expense associated with litigating an overtime class action.  The California case, *Bell v. Farmers Insurance Exchange*, was one of the first lawsuits filed in California seeking recovery of overtime pay on behalf of claims adjusters. 137 Cal. App. 4th 835, 838 (2006).  *Bell* was originally filed on October 2, 1996.   After the class was certified, 295 class member depositions were taken, and the case was tried to a jury in 2001.  Judgment was entered for plaintiffs.  However, as a result of multiple intervening appeals, which resulted in four published appellate opinions – 87 Cal. App. 4th 805 (2001); 115 Cal. App. 4th 715 (2004); 135 Cal. App. 4th 1138 (2006) and 137 Cal. App. 4th 835 (2006) – the Class Members were not paid until

mid-2005, nine years after the lawsuit was originally filed. *Bell*, 137 Cal. App. 4th at 838. The federal case, *In re Farmers Overtime Pay Litigation*, MDL 33-1439, was an MDL proceeding consolidated in the District of Oregon. The first case was originally filed in 2001. In 2003, the district court conducted a three-week bench trial, and on November 3, 2003, the court ruled that certain claims adjusters were entitled to overtime pay. *In re Farmers Ins.*, 300 F. Supp. 2d 1020 (D. Or. 2003). Subsequently, a $52.5 million judgment was entered for plaintiffs. However, on March 30, 2007, six years after the original lawsuit was filed, the Ninth Circuit reversed the district court and entered judgment for Farmers. *Miller,* 481 F.3d 1119. Like the *Farmers* cases, this case involves a novel application of the overtime laws to a position that historically has been regarded as exempt. The risk, expense, and delay associated with litigating such a case weighs in favor of final approval of the Settlement.

## IV.   THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT THE TRIAL FAVORS FINAL APPROVAL

Plaintiffs strongly believe that their lawsuit is maintainable as a class action. However, there are risks associated with the class certification issue. For example, AGE contends that class certification is inappropriate because, *inter alia*, the primary duty of a Financial Consultant varies based on a number of factors, including each Financial Consultant's book of business, experience level, training, and business focus (*e.g.*, individual versus institutional investors). *See*, *e.g.*, *Bachrach v. Chase Investment Services Corp.*, No. 06-2785, 2007 U.S. Dist. LEXIS 80927 (D. N.J. Nov. 1, 2007) (refusing to certify claims for overtime and wage deductions brought on behalf of financial advisors); *Handler v. Oppenheimer & Co., Inc.*, Case No. BC 343542 (Cal. Super. Ct. Oct. 9, 2007) (denying certification to putative class of allegedly misclassified financial advisors); *Ubalde v. Prudential Secs., Inc.*, Case No. BC 245149 (Cal. Super. Ct. Nov. 1, 2004) (same); *Perry v. U.S. Bank*, No. 00-1799, 2001 WL 34920473, at *6 (N.D. Cal. Oct. 16, 2001) (denying certification of a putative class of allegedly misclassified personal bankers).

In addition, AGE might have argued that the wage deduction claims turn on whether business expenses are "necessary" and benefit the employee, which would require a case-by-case determination. The uncertainty of whether a contested class certification motion would have been granted further militates in favor of approving the settlement.

## V.    THE AMOUNT OFFERED IN SETTLEMENT FAVORS FINAL APPROVAL

The Maximum Settlement Amount (or the Settlement Consideration) is the maximum amount that AGE shall pay under the terms of the Stipulation, which is the gross sum of $12,000,000, plus interest accruing on that amount.  Plaintiffs respectfully submit that when considering the amount that will be paid to Class Members by Compensable Months, the Settlement compares favorably with other wage and hour settlements involving stockbrokers.  For example, on January 5, 2009, the Hon. Dan Aaron Polster of the Northern District of Ohio granted final approval to a settlement of a nationwide class action lawsuit (excluding residents of California) involving stockbrokers employed by Edward D. Jones & Co., L.P.  *See* Docket No. 35, "Order Certifying Membership of Collective Action Class and Entering Judgment," *Weaver, et al. v. Edward D. Jones & Co., L.P.*, Case No. 08-540.  Under that settlement, Class Members received approximately $28.11 per work month.  By way of comparison, it is estimated that Class Members in this Settlement will receive between $22 and $25 for each Compensable Month in "Tier One" states and between $37 and $42 for each Compensable Month in "Tier Two" states. Smith Decl., ¶ 13.[5]

Although there were several earlier nationwide wage and hour settlements involving stockbrokers in which Class Members received higher monthly payments than Class Members in the instant case, it is important to understand the significant legal developments that resulted in this case having a lower settlement value than those earlier cases.  For example, many of those other settlements predated the issuance of the November 27, 2006 DOL Opinion Letter, which significantly reduced the value of the stockbrokers' overtime claims.  Similarly, several of the settlements predated the June 2007 decision in *Hein*, 511 F. Supp. 2d at 575, which dismissed the overtime claims of a financial advisor because it was "plain and unmistakable" that he met the administrative exemption.

The Net Settlement Amount will be allocated to Participating Claimants in accordance

---

[5]    These estimated monthly payments are approximate and may change for multiple reasons, including but not limited to the total amount of interest that accrues on the Maximum Settlement Amount by the time of payment and the pro rata redistribution of up to $500,000 of unclaimed funds to Participating Claimants.

1   with the allocation formula recommended by the Special Master and previously approved by the

2   Court. Docket No. 25. The allocation formula was developed by Class Counsel and provided to

3   counsel for AGE prior to the Parties' hearing before the Special Master. *See* Stipulation, § 2.3.1.

4   Judge Legge thoroughly considered the laws of the 50 jurisdictions covered by the Settlement and

5   recommended an allocation formula that paid more under the Settlement to those Class Members

6   who might have had more viable wage deduction claims in their states than those Class Members

7   who worked for AGE in other states. The consideration to Participating Claimants will be

8   allocated as follows: The work month payment for Participating Claimants from states with

9   favorable deduction laws ("Tier Two states") is 168% of the work month payments for

10  Participating Claimants from states without favorable deduction laws ("Tier One states").[6] This

11  allocation formula follows the template that was approved by the district courts in *Bahramipour* v.

12  *Citigroup,* No. C 04-4440 (N.D. Cal. *transferred* Oct. 20, 2004) and *Steinberg v. Morgan Stanley*,

13  No. 06-CV-2628 BEN (S.D. Cal. filed Nov. 29, 2006).

14          In recommending that the Court approve the Plaintiffs' proposed allocation formula, Judge

15  Legge concluded as follows:

16          The proposed allocation accomplishes some worthwhile objectives: First, all of the
            validly recognized claimants will get something. Second, it is not a one-size-fits-
17          all approach which ignores the many differences in the law among the states.
            Third, it attempts to be as consistent as the facts permit with other settlements
18          which have been approved by courts in similar cases (*e.g.*, *LaVoice v. Citigroup*,
            N.D. Cal. 07-801; *Glass v. UBS Financial*, N.D. Cal. 06-4068; *Bahramipour vs.*
19          *Citicorp.*, N.D. Cal. 04-4440; *Steinberg v. Morgan Stanley*, S.D. Cal. 06-2628).
            Fourth, it recognizes the distinctions between the strengths of claims under the
20          FLSA versus those under state laws. Fifth, it recognizes the distinctions between
            states that do and do not have wage deduction laws favorable to plaintiffs. And,
21          finally, the proposal bows to the inevitable conclusion that attempting to work out
            an allocation that include [sic] all variants of per person, per job description, per
22          state, per type of claim, and per each type of state law, is simply not doable.

23

---

24  [6]     The "Tier 1 states" are: Alabama, Arkansas, Arizona, Colorado, Connecticut, District of
25  Columbia, Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Louisiana, Massachusetts,
    Maryland, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska,
26  New Mexico, Nevada, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, Virginia, and
    Wisconsin. The "Tier 2 states" are: Alaska, Hawaii, Indiana, Iowa, Kentucky, Maine, Michigan,
27  New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, South Dakota,
    Vermont, Washington, West Virginia, and Wyoming.

28

*See* Report, Docket No. 21, at 9.  These facts weigh heavily in support of final approval.

## VI.   THE EXTENT OF DISCOVERY COMPLETED AND THE STAGE OF THE PROCEEDINGS FAVOR FINAL APPROVAL

Prior to reaching the tentative settlement, the Parties exchanged significant amounts of information (both formally and informally).  Smith Decl., ¶ 10.  Further, Class Counsel, some of whom represented the plaintiff class in the *Takacs* action, reviewed filings in the *Takacs* action and interviewed Financial Consultants.  Accordingly, Class Counsel fully understood the duties and responsibilities of the Class Members, AGE's compensation policies, and the composition of the Settlement Class.  The Ninth Circuit has repeatedly held that, in class action settlements, extensive formal discovery "is not a necessary ticket to the bargaining table [ ] where the parties have sufficient information to make an informed decision about settlement." *In re Mego Financial Corporation Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotes omitted).  Here, Class Counsel had more than enough information to negotiate a fair settlement.  As such, this factor weighs in favor of final approval.

## VII.   THE EXPERIENCE AND VIEWS OF COUNSEL FAVOR FINAL APPROVAL

Plaintiffs' attorneys are experienced in this area of law.  Class Lead Counsel Jeffrey G. Smith of Wolf Haldenstein Adler Freeman & Herz LLP, is Co-Lead Counsel in the *Wachovia Sec. LLC Wage and Hour Litig.*, MDL No. 07-ML-1807, Master File No. SACV 05-1031 (C.D. Cal. filed Oct. 19, 2005), currently pending in the Central District of California and was Lead Counsel in the recently concluded *Steinberg v. Morgan Stanley*,  06-CV-2628 BEN, and Co-Lead Counsel in *Bahramipour v. Citigroup Global Markets, Inc.*, N.D. Cal. Case No. 04-04440, the largest of the wage and hour settlements involving financial advisors.  He has also been lead counsel in wage and hour litigations against Morgan Stanley, Prudential and Ryan Beck.  Smith Decl., ¶ 8.  Further, the other members comprising Class Counsel also have significant experience in wage and hour litigation. *See id.*

## VIII.   THE OVERWHELMINGLY POSITIVE REACTIONS OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT SUPPORT FINAL APPROVAL

The reaction of Class Members to the Settlement has been overwhelmingly favorable.

Only 25 Class Members (0.29% of the Class) have opted-out of the Settlement in a timely and valid manner, and *only* one individual (who is not a Class Member and has no apparent interest in this case) has filed an objection. Keough Decl. ¶¶ 10-11. By way of comparison, in *Sommers v. Abraham Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (E.D. Pa. 1978), the district court found that an opt-out rate of 4.25% (8,000 opt-outs out of 188,000 class members) was a factor that *supported* approval of the settlement. Similarly, in *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979), the court approved a class action settlement in which 160 out of 1,127 class members (nearly 16% of the class) plus three of the four named plaintiffs filed objections. *Id.* at 616, 624; *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2003) (Ninth Circuit upheld district court's approval of a settlement involving 90,000 class members, when there were 500 opt-outs and 45 objections).

## IX.   THERE WAS NO COLLUSION BETWEEN THE PARTIES

Finally, the Settlement is not the product of collusion. To the contrary, the Settlement negotiations were at all times adversarial, conducted at arm's-length, and required the assistance of an experienced mediator. Smith Decl., ¶¶ 10-12 .

## X.   THE SETTLEMENT CLASS AND COLLECTIVE ACTION SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ONLY[7]

In response to an order of this Court, Plaintiffs submitted "Plaintiffs' Unopposed Supplemental Memorandum of Law Regarding Class Certification in Support of Joint Motion to Certify Settlement Class" ("Class Certification Memorandum"). Docket No. 15. The Class Certification Memorandum provided a detailed argument in support of the certification, for settlement purposes only, of the Class and Collective Action (under the FLSA) in this settlement. That argument is incorporated herein by reference and not be repeated in full. Rather, the following is a brief summary.

Rule 23 provides that a court may certify an action as a class action where, as here,

---

[7]   AGE has stipulated for settlement purposes only that the requirements of Rule 23(a) and 23(b)(3) have been met. AGE expressly retains the right to dispute the propriety of class certification should the Settlement not receive final approval. Thus, this section summarizes Plaintiffs' position only and is not endorsed by AGE.

plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule 23(b). *Hanlon*, 150 F.3d at 1022.   Rule 23(a) provides that a class may be certified if:

> (1)     the class is so numerous that joinder of all members is impracticable;
>
> (2)     there are questions of law or fact common to the class;
>
> (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Because the parties seek certification of the class for settlement purposes only pursuant to Rule 23(b)(3), Plaintiffs must also satisfy the requirements of that subsection, which provides that "an action may be maintained as a class action" if Rule 23(a) is satisfied and if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23 (b)(3).

However, one aspect of whether a class action is superior under  Rule 23(b)(3) – *i.e.*, whether a class action is "manageable" – need not be satisfied in order to certify a class in the settlement context: "Confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 691, 629 (1997).

In this case, the numerosity requirement is satisfied since there are 8,390 potential Class Members. Keough Decl., ¶ 3.

Plaintiffs contend that the commonality requirement is also satisfied since AGE treated all of its Financial Advisors alike, that all Class Members have an overtime claim in common, and that Class Members in 21 states have, in addition, a deduction claim in common.   The Consolidated Complaint also alleges that all Class Members were misclassified by AGE and thus did not receive overtime pay as required by the FLSA and state wage and hour laws, and that AGE

made improper deductions from Class Members' compensation in violation of the wage and hour laws in 21 states.

Plaintiffs also contend that the typicality requirement is satisfied since the Plaintiffs and the members of the Settlement Class are (or were) all classified as exempt by AGE and are (or were) all subject to the same compensation arrangements which include what Plaintiffs allege to be improper deductions.

Plaintiffs also allege that the representative Plaintiffs here meet both prongs of the adequacy test. Plaintiffs contend that there are no actual or potential conflicts of interest between the class representatives and the members of the Settlement Class. Moreover, there is no dispute that Plaintiffs have retained highly capable and well-recognized counsel with extensive experience in wage and hour cases.  Plaintiffs' counsel has procured significant settlements before the Court and other courts. *See, infra,* at § VII.

Plaintiffs also contend that common questions of law and fact – *i.e.,* whether Class Members should have and did receive overtime pay and whether AGE made improper deductions from their compensation - predominate over individual questions, since the only individual issue in this case is the actual amount of the award each individual class member will receive.

Plaintiffs also contend that a class action is superior to other available methods of the fair and efficient adjudication of this case, since the only alternative is thousands of individual cases, which would be highly inefficient for the court system and individual plaintiffs.

Finally, Plaintiffs contend that, as it is appropriate to conditionally certify the Class for settlement purposes only under Rule 23, it also follows that conditional certification of the collective action under section 216(b) of the FLSA is appropriate.

AGE disputes Plaintiffs' position, as stated above and in Plaintiffs' Class Certification Memorandum, concerning class and collective action certification, including without limitation, Plaintiffs' position concerning commonality, typicality, the adequacy of the representative Plaintiffs to represent the Class and Collective Action, predominance and superiority. Nonetheless, AGE has stipulated, for settlement purposes only, to certification of the Class and Collective Action for purposes of this Settlement.  Stipulation, § 2.1.1.

XI.   **CONCLUSION**

This Settlement provides substantial benefits to Class Members.  The Settlement terms are fair, reasonable and adequate.   Accordingly, for all of the foregoing reasons, the Parties respectfully request that the Court grant final approval of the Settlement.

DATED: August 10, 2009                         WOLF HALDENSTEIN ADLER
                                               FREEMAN & HERZ LLP
                                               JEFFREY G. SMITH (133113)


                                               _____/s/ Jeffrey G. Smith_____
                                               JEFFREY G. SMITH (133113)
                                               ROBERT ABRAMS

                                               270 Madison Avenue
                                               New York, NY  10016
                                               Telephone: (212) 545-4600
                                                         -and-
                                               FRANCIS M. GREGOREK (144785)
                                               RACHELE R. RICKERT (190634)
                                               750 B Street, Suite 2770
                                               San Diego, CA  92101
                                               Telephone: (619) 239-4599

                                               HOFFMAN & LAZEAR
                                               H. TIM HOFFMAN (49141)
                                               180 Grand Avenue, Suite 1550
                                               Oakland, CA  94612
                                               Telephone: (510) 763-5700

                                               THIERMAN LAW FIRM P.C.
                                               MARK THIERMAN (72913)
                                               7287 Lakeside Drive, Suite 101
                                               Reno, NV  89511
                                               Telephone: (775) 284-1500

                                               CARLSON LYNCH LTD
                                               GARY F. LYNCH
                                               36 N. Jefferson Street
                                               Post Office Box 7635
                                               New Castle, PA  16107

                                               BARROWAY TOPAZ KESSLER
                                                 MELTZER & CHECK, LLP
                                               GERALD D. WELLS, III (257496)
                                               280 King of Prussia Road
                                               Radnor, PA  19087
                                               Telephone: (610) 667-7706

                                               *Attorneys for Plaintiffs*

1   DATED: August 10, 2009                MORGAN, LEWIS & BOCKIUS LLP
2                                          DARYL S. LANDY

3                                              _____/s/ Daryl S. Landy_____
4                                                       DARYL S. LANDY

5                                          2 Palo Alto Square
                                           3000 El Camino Real
6                                          Palo Alto, CA  94306
                                           Telephone: (650) 843-7561
7                                                    -and-
                                           ANDREW J. SCHAFFRAN
8                                          101 Park Avenue
                                           New York, NY  10178
9                                          Telephone: (212) 309-6380

10                                         *Attorneys for Defendant*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION REGARDING CONCURRENCE

I, Jeffrey G. Smith , am the ECF User whose identification and password are being used to file this MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT.  In compliance with General Order 45.X.B, I hereby attest that Daryl S. Landy has concurred in this filing.

DATED:  August 10, 2009                      WOLF HALDENSTEIN ADLER FREEMAN
                                             & HERZ LLP


                                             By: _____Jeffrey G. Smith_____
                                                         JEFFREY G. SMITH

AGEDWARDS:16968.BRF

Case No. 08 CV 0338 JAH (RBB)